# STATE v. HAROLD J. REYNOLDS.[1]

November 19, 1954.

No. 36,372.

---

[1]Reported in 66 N. W. (2d) 886.

*Neumeier, Harrigan & Eckberg,* for defendant.

*J. A. A. Burnquist,* Attorney General, *Charles E. Houston,* Assistant Attorney General, and *William T. Johnson,* County Attorney, for the State.

NELSON, JUSTICE.

The appellant was convicted of the crime of disorderly conduct in the municipal court of Stillwater, Washington county, Minnesota. He appealed the conviction to the district court of Washington county. Before the commencement of the trial the defendant moved the court to dismiss the action on the ground that the statute upon which the complaint was based, L. 1953, c. 661 (M. S. A. 615.17) was void and unconstitutional because of vagueness and indefiniteness. The court denied this motion but stated that the question

raised by it was important and doubtful and at the request of defendant's counsel in open court certified the question to this court pursuant to § 632.10.

The complaint stated that on June 30, 1953, the defendant attempted to enter the home of Stanley Gilbertson, where the complainant's 13-year-old daughter was a baby sitter, and engaged in brawling conduct toward her. The statute under which the complaint was made is § 615.17, and it provides that:

"Every person who engages in brawling or fighting, shall be guilty of disorderly conduct, herein defined to be a misdemeanor, and upon conviction thereof, shall be punished by a fine of not to exceed $100 or by imprisonment in the county jail for not to exceed 90 days."

The theory of defendant's motion to dismiss the proceedings before the district court appears to be that the complaint does not charge a crime and, therefore, the defendant should not be put on trial; that § 615.17 does not meet the requirements of U. S. Const. Amend. XIV and Minn. Const. art. 1, § 7, since it denies due process of law. The title to § 615.17 when enacted read:

"An act prescribing that certain defined conduct shall constitute disorderly conduct and a misdemeanor and prescribing penalties for the violation thereof."

The body of the act consisted of but the single section set out above.

The defendant, in making the point that the statute is vague and indefinite and, therefore, unconstitutional, contends that it is not limited to public places and that there are no limitations upon the words "brawling" and "fighting." He claims that these terms, due to the vagueness and the indefiniteness of the statute, include many innocent acts which it cannot have been the intention of the legislature to make a crime.

The question is: Does the statute, which defines disorderly conduct to consist in brawling or fighting, meet the test as a criminal statute? Is the prohibited conduct, as defined in § 615.17, stated in language sufficiently explicit so that men can know what is being prohibited thereby and what it is their duty to avoid?

■ We are unable to agree with the defendant's contention that § 615.17 is violative of the constitution. Neither can we reach the conclusion that the statute as a whole fails to declare what specific conduct may be disorderly and constitute a misdemeanor subject to a specific penalty under the criminal code of the state.

The term "disorderly conduct" is a more comprehensive term than breach of the peace. It is broader and more inclusive than breach of the peace or nuisance. The word "disorderly" is a word that is almost self-explanatory as it is ordinarily used. When used in a legal sense it has a well-established meaning relating to the public peace and good order. When the term is used in relation to public offenses it means that a situation over which the individual has control is not being regulated by the restraint of morality; that compliance with the restraints of good order and law is lacking. "Disorderly conduct" generally means some act which tends to breach the peace or to disturb those people who may hear or see it. For a person to be guilty of disorderly conduct the public or some member thereof must be disturbed. It is generally considered that disorderly conduct embraces certain minor offenses defined by statute or ordinance to consist in disturbances of the peace and quiet of the public, the community, families, or a class of persons, or in conduct which tends to provoke breach of the peace or to corrupt public morals.

■ There is authority for holding that a wilful or unlawful purpose is not an element of the offense of disorderly conduct unless made so by statute. See, 27 C. J. S., Disorderly Conduct, § 1, note 41. In State v. Shelby, 95 Minn. 65, 66, 103 N. W. 725, 726, this court, in discussing the question of intent where the defendant was charged with the use of abusive language, intended and naturally tending to provoke an assault and breach of the peace, said:

"* * * We are of the opinion that the language so conceded to have been used was not, under the circumstances shown by the evidence, such as to justify a conviction, in the absence of an evil intent. If the language charged by the complainant, including the particularly offensive words, was in fact used, it would warrant a

conviction, without reference to the intention of defendant, for it was such as might reasonably tend to provoke a breach of the peace."

This court thereby indicated that a statute or ordinance sometimes makes intent an element of the offense in connection with the doing of certain acts and dispenses with it in connection with others, depending on the nature of the conduct or the act. See, also, 18 C. J., Disorderly Conduct, § 3, note 28.

Our court has defined "disorderly conduct" as follows: Conduct is "disorderly" in the ordinary sense when it is of such nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby. State v. Perry, 196 Minn. 481, 265 N. W. 302; State v. Zanker, 179 Minn. 355, 229 N. W. 311; State v. Cooper, 205 Minn. 333, 285 N. W. 903, 122 A. L. R. 727.

In State v. Korich, 219 Minn. 268, 17 N. W. (2d) 497, this court held that the evidence failed to sustain defendant's conviction under a Minneapolis ordinance and clearly laid down the rule that mere annoyance is insufficient to support a finding of disorderly conduct because not every annoyance is born of culpable conduct. But it adhered to the rule already established in this state that conduct is disorderly in the ordinary sense when it is of such a nature as to affect the peace and quiet of the persons who may witness it and who may be disturbed or provoked to resentment by it—the probable and natural consequences of the conduct, however, being always an important element.

While it is impossible to state with accuracy just what may be considered in the law as amounting to disorderly conduct, we hold that to come within the prohibition of our statute the annoyance caused by the act must be both offensive and disorderly. The acts and the conduct must ordinarily be such as are of a nature to corrupt the public morals or to outrage the sense of public decency, whether committed by words or by acts. 17 Am. Jur., Disorderly Conduct, § 1.[2]

[2]Commonwealth v. Lombard, 321 Mass. 294, 296, 73 N. E. (2d) 465, 466; Teske v. State, 256 Wis. 440, 41 N. W. (2d) 642; Hackney v. Commonwealth, 186 Va. 888, 890, 892, 45 S. E. (2d) 241, 242, 243.

It has been held that the offense may be committed by doing any act whereby a breach of the peace may be occasioned.[3]

We believe the rule applicable to § 615.17 to be that to be guilty of disorderly conduct the accused must have committed one of the acts prohibited by the statute relating to disorderly conduct and the act or acts must have been committed under circumstances likely to cause a breach of the peace or be of such a nature as to affect the peace and quiet of persons who may witness them and who may be disturbed or provoked to resentment thereby; but always the probable and natural consequences of the acts or the conduct must be considered and given weight as an important element. In the present form of the statute, an actual intent to provoke a breach of the peace may or may not be an important element.

■ It necessarily follows that whether particular conduct or words or acts are or are not disorderly must at all times be dependent upon the facts of each particular case and the circumstances that surround the incident.[4] The question of whether or not the offense has in fact been committed depends upon the circumstances of the situation and the evidentiary proof tested by the rules of procedure applicable at the trial.

A complaint for a statutory offense, such as a violation of § 615.17, must be framed upon the statute, and this fact must distinctly appear upon the face of the complaint itself. In order that it may so appear, the pleader must either charge the offense in the language of the statute or specifically set forth the facts constituting the same. People v. Carpenter, 207 Ill. App. 588.

Disorderly conduct was not cognizable as an offense at common law; it is a statutory offense. Legislatures, however, have frequently

---

[3]People v. Rabey, 48 N. Y. S. (2d) 937, 939.

[4]See, People v. Cooper, 366 Ill. 113, 7 N. E. (2d) 882, 110 A. L. R. 223; People ex rel. Meakim v. Eckman, 63 Hun 209, 216, 18 N. Y. S. 654, 658; Sheppard v. City of Jackson, 11 Ga. App. 811, 76 S. E. 367; Williams v. City of Valdosta, 47 Ga. App. 810, 812, 171 S. E. 553, 554; People v. Kaufman, 165 Misc. 670, 1 N. Y. S. (2d) 362; City of Pineville v. Marshall, 222 Ky. 4, 299 S. W. 1072; 3 Burdick, Law of Crime, §§ 718, 719; 17 Am. Jur., Disorderly Conduct, §§ 1, 2; 27 C. J. S., Disorderly Conduct, 1.

defined what constitutes disorderly conduct and prescribed punishment therefor, and it has also been a common practice for legislatures to authorize municipal authorities to punish acts which constitute disorderly conduct. The statute or ordinance may enumerate the specific acts which constitute the offense of disorderly conduct, and there is authority to the effect that disorderly conduct may constitute a penal offense even though it does not fall within the legislative definition of other specified offenses. 17 Am. Jur., Disorderly Conduct, §§ 1, 2, and 3.

The legislature of this state may very well have intended to extend· the definition of disorderly conduct beyond what "brawling" denotes to include physical combat. It may well be that the legislature considered that the term "brawling" did not necessarily include the notion of physical combat and used the term "fighting" also so that the alternative words might provide a reasonable protection to the public against a breach of the peace. See, Gitlow v. Kiely (S. D. N. Y.) 44 F. (2d) 227. The extreme supposition set forth in the defendant's brief can, we believe, be shown not to have been within the legislative intent. In any event the difficulty in construing the statute has no bearing on the question of its validity because, whatever construction of the statute is adopted, a definite standard is in fact established.

If a statute or ordinance prohibits acts of disorderly conduct in a public place, or in a place which would ordinarily be included in a definition of a public place, such as streets, highways, thoroughfares, alleys, and the like, it is essential to constitute the offense that the act be committed at a place which is within the protection of the statute. If the statute does not require that the act be committed in a public place or a specified place, then it is sufficient if the act is committed within the confines of the jurisdiction of the court, and, dependent upon the circumstances, it may be enough if the peace of only one person is disturbed. See, 27 C. J. S., Disorderly Conduct, § 1.

The defendant contends that the terms of the statute are vague, indefinite, and uncertain and that it invades the field where acts

may be described by the same terms and not constitute a public offense. The state contends that men of common intelligence know what such language means and that they understand by its terms what conduct is prohibited. This court held in State v. Northwest Poultry & Egg Co. 203 Minn. 438, 439, 440, 281 N. W. 753, 754, that "Laws which create crimes, ought to be so explicit in themselves, or by reference to some other standard, that all men, subject to their penalties, may know what acts it is their duty to avoid." No one would contend that this is not a just and fair test. This court also said in that case that "The uncertainty hit at * * * [was] not the difficulty of ascertaining whether close cases fall within or without the prohibition of a statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved," citing in support of this statement Nash v. United States, 229 U. S. 373, 33 S. Ct. 780, 57 L. ed. 1232; United States v. Wurzbach, 280 U. S. 396, 50 S. Ct. 167, 74 L. ed. 508.

In that same case this court stated the test of due process, citing Collins v. Kentucky, 234 U. S. 634, 34 S. Ct. 924, 58 L. ed. 1510, as authority therefor, as follows (203 Minn. 441, 281 N. W. 754):

"Due process requires that penal legislation expressed in general and flexible terms furnish a test based on knowable criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command."

We recognize that certain standards must be met if due process of law is to be satisfied. Statutes ought to be so explicit in themselves or so clear in their context or by reference to some other standard that men may know what it is their duty to avoid. This court has recognized that the exigencies of life compel men to act in some fashion and that their action ought not to be penalized unless it fails to comply with cognizable rules. The legislature is vested with the power to declare and define rules of conduct and is, therefore, vested with a large measure of discretion. This discretion is bounded by constitutional restraints. Penalties for the infraction of statutory provisions will be inflicted only if a guide is established

in the statute by which those who are subject to its force can with reasonable certainty assess the consequence of contemplated conduct.

Due process, however, does not require absolute certainty nor mathematical precision in the statement of the conduct demanded or disapproved. It is not required that the legislature designate every particular circumstance that calls for an imposition of a penalty, for where a form of conduct rather than a regulation of a specific act is propounded, the definition of the class of acts to which the statute applies must, in the nature of things, be broad and inclusive. For that reason the use of general and flexible terms in fixing the standard in a statute is inescapable. If it can be determined with reasonable certainty what the conduct is which is disapproved, then the statute would not be unconstitutional on the ground that the definition which it contains is broad and not specific in detail as to the act that offends.

The all-important question is whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act or conduct is disapproved.

There can be little question, if there be any at all, about the validity of § 615.17 since common usage and our legal tradition has given to its terms "brawling" and "fighting" a clear and definite meaning. The offense of being a common brawler or a common scold was indictable at common law. These terms meant a person of an habitually quarrelsome, noisy, and wrangling nature though "brawler" denoted something harsher than "scold"—namely, anger, loud outcries, and tumult. The offenders were considered disturbers of the peace, and their offenses were indictable at common law as public nuisances. Both are now obsolete as common-law offenses. See, 3 Burdick, Law of Crime, § 936. However, the terms "common brawler," "brawling," or "brawl" appear in the present-day law of many states as a part of the definition of the statutory offense of disorderly conduct. "Making a brawl and tumult" is a separate statutory offense distinct from the offense of disorderly conduct in some jurisdictions according to the early laws and decisions of

three states. See, 27 C. J. S., Disorderly Conduct, § 1, p. 279. Statutes defining the offense of disorderly conduct in other states frequently use terms which are equivalent in meaning, such as "loud and unusual noise," "quarreling," and "tumultuous conduct." Therefore, certain principles seem to be applicable to this case, namely, "if the statute is no more uncertain of meaning or difficult of application to necessarily varying facts than has been repeatedly sanctioned by the courts it must be given effect. * * * Courts will also favor the conclusion that the terms of a statute are reasonably certain if they are widely used in the same sense in legislative enactments." State v. Northwest Poultry & Egg Co. 203 Minn. 438, 441, 281 N. W. 753, 755.

We conclude that the statute is neither vague nor indefinite in the sense that it thereby violates the federal and state constitutional guarantees of due process of law.

