No. 45,680

STATE OF KANSAS, *Appellee,* v. FRANKLIN CLEVELAND, *Appellant.*

(469 P. 2d 251)

Opinion filed May 9, 1970.

*Charles S. Scott,* of Scott, Scott and Scott, of Topeka, argued the cause, and *J. Nelson Thompson,* of Kansas City, Missouri, was with him on the brief for the appellant.

*Ronald D. Innes,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a conviction and sentence in a prosecution for disturbance of the peace.

The defendant, Franklin Cleveland, was charged with disturbing the peace and quiet of Jim Reynolds and other persons at the Student Union Building of Kansas State University, Manhattan, Kansas, by the use of profane and vulgar language, and rude and challenging behavior, on the 7th day of January, 1969, contra to K. S. A. 21-950. Appellant's case was consolidated for trial with that of Andrew Rollins who had been charged with a similar offense against

Michael Huston and other persons on the same occasion. A jury trial was waived and the case was tried before the judge of the district court. Both defendants were found guilty and each fined fifty dollars.

Cleveland has filed a separate appeal.

Michael D. Huston is a corporal in the Marine Corps and a member of officers selection team for the purpose of recruiting officers for the marines. On January 7, 1969, he was working in that capacity in the lobby of the Student Union Building of the Kansas State University. Huston was seated at a table when he was approached by Andrew Rollins and the defendant, Franklin Cleveland. They engaged Huston in conversation by asking him questions and then interrupted his answers. In the course of the dialogue Huston was called a killer, a mercenary and a prostitute. However, that language was mild, indeed, compared to that which was spoken generally. Rollins and the defendant were about eighteen inches from Huston during the episode.

The language used in this shocking dialogue is so disgusting that we will not defile the pages of our reports with a particular recital. It will suffice to state that language was directed to the desecration of motherhood of the most depraved sort. The marines, the flag and the President of the United States were referred to in dissolute, lewd and perverted language.

There were about twenty young men and women in the vicinity of the recruiting table. We will present in some detail the testimony as to the demeanor of the defendant and Rollins and the affect of the dialogue on the people in the area.

James Reynolds, program director, and whose duty it was to supervise the Student Union Building and maintain order, testified:

"He did not mention anything to Mr. Cleveland about his remarks on January 7, 1969. His reason for not saying anything to him was because it probably would have precipated an incident in the lobby of the Union. He was aware that there were KBI people present. Yet, in view of the fact that the law enforcing officers were present he thought perhaps that this might set off an incident that would get beyond control. He does not feel qualified to make judgment as to whether the KBI agents would be able to control any incident that may occur following any confrontation that he may have made with Cleveland. . . ."

Another witness testified:

"Q. You've testified that you saw Mr. Cleveland in the area, what was Mr. Cleveland doing, if you know?

"A. He was accompanying Mr. Rollins at that time.

"Q. You've commented as to what Mr. Rollins said, would you please tell the court what you observed the general demeanor of Mr. Rollins and Mr. Cleveland to be at about 4:45, during this period of time that he was talking to the corporal?

"Q. (By Mr. Innes) Could you describe for the court the actions of first Mr. Rollins at the time you first observed him upon coming into the union?

"A. Mr. Rollins was arguing and—was the individual making the most conversation, the most conversation with the Marine Corps Recruiter and when the Marine Corps Recruiter would attempt to answer his questions, Mr. Rollins would interrupt him not allowing him to answer the questions. In fact at the end of the interview, he did not seem entirely rational, he appeared to be upset and in my estimation argumentative.

"A. He read this article to the marine recruiter and then asked if he had—the recruiter had anything to say. When the recruiter attempted to answer his questions, the conversation was started again by Rollins and Mr. Cleveland and not allowing him the opportunity to answer any questions that was prefaced to him.

"Q. And what was his demeanor if you know?

"A. He appeared to be angry.

"Q. He appeared to be angry, and now you mean Mr. Cleveland?

"A. Yes.

"Q. During the time that Mr. Cleveland and Mr. Rollins were talking to the Marine Corps recruiter, what—if you know—what was their—how loud were they talking, if you know?

"A. Quite loudly.

"Q. And was Corporal Huston talking in a loud manner?

"A. I couldn't hear Corporal Huston, he was talking in a very soft voice."

There was further testimony by a KBI agent, Robert Clester—

"Q. Allright. And what was the reaction of the other people standing around, did—just tell the court what was their reaction at the time these two defendants were talking to the recruiter?

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The Witness: Some were attentive and some were—gave the impression to me that they were offended and were moving away.

"Clester noted that the people who were laughling and enjoying the dialogue between Rollins and Cleveland and Corporal Huston were a group gathered around the table with Rollins and Cleveland. Others in the area appeared to be offended and moved away upon hearing the conversation and he observed no one back in the crowd laughling."

The appellant first contends that the dialogue between the defendant, Rollins and Huston, the marine recruiter, and the context in which the profanity was used, did not constitute the offense of disturbance of the peace within the purview of K. S. A. 21-950. That statute provides:

"Every person who shall willfully disturb the peace and quiet of any person, family or neighborhood, shall upon conviction thereof be fined in a sum not

exceeding one hundred dollars, or by imprisonment in the county jail not exceeding three months."

"Breach of peace" or "disturbance of the peace" is a disturbance of public tranquility or order and may be created by any act which molests inhabitants in the enjoyment of peace and quiet or excites disquietude or fear. It has been said that the public peace to be protected is that invisible sense of security and tranquility so necessary to one's comfort and which every person feels to be under the protection of the law and for which all governments are created. (See 11 C. J. S., Breach of the Peace, § 1, p. 817, and footnotes.)

The court has defined "disturbance of the peace" as that term is used in K. S. A. 21-950. In *State v. Hebert*, 121 Kan. 329, 246 Pac. 507, we held in the syllabus:

"To constitute a breach of the peace it is not necessary that actual personal violence be employed. Abusive and insulting language by one towards another, accompanied by threats of violence against such other which puts him in fear, constitutes the offense defined by R. S. 21-950." (Syl. ¶ 1.)

However, it is not necessary that a person be put in fear to constitute a breach of peace. The use of loud and indecent language may be sufficient when public tranquility is disturbed.

In *State v. Appleton*, 70 Kan. 217, 78 Pac. 445, we stated at page 220:

". . . One who applies vile epithets to another in a public street, in the presence of bystanders, with the intention of annoying and disturbing such person, commits a breach of the peace. . . ."

Again in *City of Topeka v. Heitman*, 47 Kan. 739, 28 Pac. 1096, we stated on page 740:

". . . We think the complaint charges an offense under § 22. It charges a disturbance of the peace by the use of loud, profane and indecent language. The peace may have been disturbed by loud talk alone. But we also think to call a man 'a damn fool and a bastard,' is the use of indecent language, and the peace of the city may have been disturbed by the use of such language. The jury found the peace of the city was disturbed by the defendant."

A more general application of the statute was given in *State v. Stroble*, 169 Kan. 167, 217 P. 2d 1073, at page 170:

"What constitutes a disturbance of the peace and quiet of a person or neighborhood, or what constitutes rude behavior or disorderly conduct, depends upon the intention of the person uttering the language, the person to whom uttered, and all the surrounding facts and circumstances. All these elements are proper issues for the trier of the facts. (*City of Fort Scott v. Arbuckle*, 164 Kan. 49, 187 P. 2d 348.) The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public

order and tranquility. It includes not only violent acts, but acts and words *likely to produce violence to others.* . . ."

It should be noted that the information charged the disturbance of the peace of Jim Reynolds and *other persons.* The information not only included Jim Reynolds, the program director for the Student Union Building, but also the marine recruiter and those who "were offended and were moving away." We give consideration not only to the language used but the place in which it was used and where young men and women were expected to congregate.

We are of the opinion that the lewd and indecent language which referred to motherhood in the most obscene and shocking manner, and the profane and perverted language addressed to the marines, the flag and the President of the United States, all in a loud voice, did disturb the feeling of security and tranquility of the young men and women in the lobby of the Student Union Building.

Appellant next contends that he was in the proper exercise of his constitutional rights as provided by the First Amendment to the Constitution of the United States and the Bill of Rights of the Constitution of the State of Kansas.

We would state that neither the Constitution of the United States nor the Constitution of the State of Kansas is a license to disturb the peace and tranquility of the respectable young men and women, to be found in a student union building, by the use of loud, lewd and perverted language.

Appellant's main thrust is that "the facts and circumstances are lacking any provocation of violence or disorder, and clear and present danger is not evident."

We have cited numerous Kansas cases holding that indecent language alone may constitute a breach of the peace. However, if we accept appellant's challenge—"what circumstances, if any, presented any riotous conditions in the case at bar?"—we find no difficulty in sustaining the conviction.

The program director was afraid to say anything "because it probably would have precipitated an incident in the lobby of the Union." Students in the vicinity were moving away. The language used was quite sufficient to create an incident or a riotous condition. The defendant and Rollins could have had no intention other than to disturb the peace and tranquility of the marine recruiter and others in the vicinity.

The appellant contends that—

". . . the court erroneously took judicial notice that the utterances were obscene per se particularly within the context that the alleged utterances were used and failing to follow the procedure as prescribed by K. S. A. 60-409 and 60-410."

The provisions of K. S. A. 60-409 (*a*) reads in part:

"Judicial notice shall be taken without request by a party, . . . of such specific facts and propositions of generalized knowledge as are so universally known that they cannot reasonably be the subject of dispute."

Although we do not wish to imply that obscenity is a necessary element of disturbance of the peace, it matters little whether judicial knowledge was taken of the nature of the language used or whether the nature of the language used was declared obscene as a matter of law, we have no hesitancy in declaring that the language described, when considered in the light of where it was used, how it was used and those present, was obscene and indecent.

Appellant contends that the institution of the charges amounted to an abuse of criminal administration to the extent of infringing on the exercise of his constitutional rights. He states:

"It is shocking indeed how these two appellants were singled out to be the victims of charges and ultimately convicted of a disturbance of the peace charge for activity which squarely falls within common parlance on campus at the Kansas State University."

The evidence does not support the contention. There was no evidence that the language described herein was used by others under the facts and circumstances presented here.

A careful examination of the record discloses no trial errors that would justify our disturbing the judgment of the trial court.

The judgment is affirmed.

APPROVED BY THE COURT.