No. 50,525

STATE OF KANSAS, *Appellant,* v. JOHN POLSON, *Appellee.*

(594 P.2d 235)

Opinion filed May 5, 1979.

*Robert J. Sandilos,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellant.

*Ted L. Peters,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal by the State from an order dismissing the amended complaint against defendant John Polson, charging the crime of disorderly conduct (K.S.A. 21-4101).

The case was called for trial on September 18, 1978. Prior to commencement of the trial defendant made a motion to dismiss the amended complaint. For the purposes of the motion the parties stipulated that the evidence would show defendant used offensive, obscene or abusive language that would tend to reasonably arouse alarm, anger or resentment in others. The parties further stipulated that Jerry Skelton, the individual to whom defendant's remarks were directed, was the only person present at the time other than the defendant.

K.S.A. 21-4101 provides:

"Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other breach of the peace:

"(*a*) Engaging in brawling or fighting; or

"(*b*) Disturbing an assembly, meeting, or procession, not unlawful in its character; or

"(*c*) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

"Disorderly conduct is a class C misdemeanor."

Defendant's motion to dismiss was predicated on the fact that only one person witnessed defendant's acts. Defendant con-

tended that K.S.A. 21-4101(c) requires the presence of more than one person by virtue of the use of the term "in others." The trial court sustained defendant's motion to dismiss the amended complaint and in so doing held:

"The Court finds that K.S.A. 21-4101 was intended to cover only situations where more than one person is present at the time of the conduct; accordingly, the Court finds that the Complaint fails to state a crime based upon the stipulation of the parties and therefore dismisses the Complaint/Information."

The State appeals from this determination pursuant to K.S.A. 1978 Supp. 22-3602(b)(1). The sole issue on appeal is whether the trial court erred in holding that K.S.A. 21-4101 (disorderly conduct) defines as a crime only such disorderly conduct as occurs in the presence of more than one person other than the defendant.

The alleged conduct of defendant is set forth in the affidavit of Jerry Skelton in support of the complaint as follows:

"On June 1, 1978, I was in the Sedgwick County Courthouse and entered an elevator on the 10th floor to descend to the first floor; as the elevator was descending, a person I know to be John Polson entered the elevator on about the 3rd floor of the Courthouse. When the elevator arrived at the first floor, I left the elevator and commenced to walk down the hallway. I was followed by Mr. Polson who in a loud and angry manner started calling me names and using offensive, obscene and abusive language some of which is as follows:   .   .   ."

The term repeatedly used by defendant to describe Skelton is deliberately excluded from the above quotation, but his language was offensive, obscene and abusive by any standard one might seek to apply.

This is the first time K.S.A. 21-4101 has been before this court for interpretation. Existing case law is based upon the statute prohibiting "disturbance of the peace," now repealed, as set forth in K.S.A. 21-950 (Corrick), which reads as follows:

"Every person who shall willfully disturb the peace and quiet of any person, family or neighborhood, shall upon conviction thereof be fined in a sum not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding three months."

The State cites for guidance certain cases decided under this prior statute:

In *State v. Stroble,* 169 Kan. 167, 217 P.2d 1073 (1950), this court affirmed a conviction of five counts of disturbing the peace. The defendant had, in separate instances, approached and made attempts to pick up school girls. This court said at p. 170:

"What constitutes a disturbance of the peace and quiet of a person or neighborhood, or what constitutes rude behavior or disorderly conduct, depends upon the intention of the person uttering the language, the person to whom uttered, and all the surrounding facts and circumstances. All these elements are proper issues for the trier of the facts. (*City of Fort Scott v. Arbuckle,* 164 Kan. 49, 187 P.2d 348.) The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts, but acts and words *likely to produce violence to others.* Stopping each little girl once and asking directions to a certain school or to ride might in some circumstances be considered proper or an act of kindness, but under the circumstances disclosed by the record in this case, it cannot be said the court was not justified in finding that a repetition of such approaches was a course of conduct amounting to molestation and a breach of the peace of the innocent children involved. This invasion of the privacy of innocent children and this disturbance of the peace of mind of parents to whom a civilized government should give unmistakable assurance of the safety of their loved ones in going to and returning from school, cannot have escaped the attention of the legislature in the passage of the law now under consideration."

In *State v. Cleveland,* 205 Kan. 426, 469 P.2d 251 (1970), this court affirmed a conviction for disturbance of the peace, based upon the defendant's language and behavior directed at a Marine Corps recruiter in the Kansas State University Union in Manhattan. At p. 429 this court said:

" 'Breach of peace' or 'disturbance of the peace' is a disturbance of public tranquility or order and may be created by any act which molests inhabitants in the enjoyment of peace and quiet or excites disquietude or fear. It has been said that the public peace to be protected is that invisible sense of security and tranquility so necessary to one's comfort and which every person feels to be under the protection of the law and for which all governments are created. (See 11 C.J.S., Breach of the Peace, § 1, p. 817, and footnotes.)"

The State notes that each count in *Stroble* involved only the defendant and the victim. It also argues the language in *Cleveland* should be construed as placing the "sense of security and tranquility" upon society as a whole, each individual member included, and not merely upon a group of more than one person. The State argues the new statute only specifically identifies prohibited conduct and does not change the concepts enunciated in the prior decisions.

The now repealed statute, K.S.A. 21-950 (Corrick), prohibited disturbing the peace of "any person"; whereas, the portion of K.S.A. 21-4101 herein involved speaks of conduct that would arouse certain emotions in "others."

A number of jurisdictions have interpreted "persons,"

"others," and "other persons" to be equally applicable to one person.

In *Lane v. Collins,* 29 Wis.2d 66, 138 N.W.2d 264 (1965), an action was filed for false arrest after the plaintiff had been arrested for disorderly conduct. The court noted that the fact the abusive language was directed to a policeman and not overheard by others did not prevent it from being a violation of the disorderly conduct statute which prohibited the use of such language in a public place within the hearing of "other persons." See also *Hogan v. State,* 36 Wis. 226, 247 (1874), wherein the Wisconsin Supreme Court interpreted the language "any act imminently dangerous to others" in a second-degree murder statute, as meaning "person or persons."

In *City of Bismarck v. Travis,* 154 N.W.2d 918, 923 (N.D. 1967), the majority of the North Dakota Supreme Court interpreted "others" in a disorderly conduct ordinance to mean "anyone other than the person who commits the act," even if such conduct is offensive to only one person.

In *Morris v. District of Columbia,* 31 A.2d 652 (D.C. 1943), the municipal court of appeals held that a taxi was a "public place" under the code, but it also noted that the fact the complaining witness to the driver's indecent and obscene remarks was the only passenger was no defense. The presence of others besides the offender and person addressed was not necessary to complete the offense of disorderly conduct. The D.C. Code, § 22-1107 (1940), made it unlawful to congregate or assemble and engage in disorderly conduct or make obscene comments or observations on persons passing by or within their hearing.

The parties do not cite, nor does our research indicate, any jurisdiction which has held that the use of the plural in such statutes excludes the singular. Minnesota, prior to the enactment of its present disorderly conduct statute, had a statute which was worded so that neither the singular nor the plural was specified. In *State v. Reynolds,* 243 Minn. 196, 66 N.W.2d 886 (1954), the old statute was interpreted to permit conviction even though only one person was involved. The court specifically held: "For a person to be guilty of disorderly conduct the public or some member thereof must be disturbed." 243 Minn. at 199. Minnesota is an important state as far as the question herein is concerned as its present statute is very similar to the statute before us, and our

statute is modeled after the Minnesota statute. Judicial Council Comment (K.S.A. 21-4101). Minn. Stat. Ann. § 609.72 provides:

**"Disorderly conduct**

"Whoever does any of the following in a public or private place, knowing, or having reasonable grounds to know, that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct and may be sentenced to imprisonment for not more than 90 days or to payment of a fine of not more than $100:

"(1) Engages in brawling or fighting; or

"(2) Disturbs an assembly or meeting, not unlawful in its character; or

"(3) Engages in offensive, obscene, or abusive language or in boisterous and noisy conduct tending reasonably to arouse alarm, anger or resentment in others."

(Since amended, but amendment not relevant herein.)

In *Matter of Welfare of S.L.J.,* \_\_\_\_\_ Minn. \_\_\_\_\_, 263 N.W.2d 412 (1978), § (3) was found to be overly broad and was construed to apply only to "fighting words."

In *City of St. Paul v. Campbell,* 287 Minn. 171, 177 N.W.2d 304 (1970), the defendant had been convicted of disorderly conduct, under a similar city ordinance, for enticing a thirteen-year-old girl to go to his apartment for the purpose of being photographed in the nude. The court found the girl did not object to the procedure and the defendant "proceeded in a quiet and orderly manner." The court reversed the conviction because no one witnessed the act. The only person disturbed by the event was the girl's mother who found out about it later. So, in actuality, no person was disturbed by the conduct while it was in progress. Accordingly, *Campbell* does not deal with the singular-plural question at all.

The Minnesota Supreme Court dealt with the same St. Paul city ordinance in *City of St. Paul v. Azzone,* 287 Minn. 136, 177 N.W.2d 559 (1970). The defendant directed obscenities toward a policeman in the police station. The court affirmed the conviction and stated:

"The term 'disorderly conduct' has been defined as conduct of such a nature as will affect the peace and quiet of persons who may witness it and who may be disturbed or driven to resentment by it. [Citations omitted.] It is not necessary that actual commotion occur. It is sufficient if defendant's conduct is likely to annoy, disturb, or arouse anger." 287 Minn. at 139-40.

Among authorities cited by the court is *Reynolds,* 243 Minn. 196. While other officers were present in *Azzone,* the court clearly did

not consider the inclusion of the plural in the St. Paul ordinance as altering the prior case law which permitted conviction if only one person was present other than the defendant.

K.S.A. 77-201 provides:

"In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:

. . . .

"*Third.* Words importing the singular number only may be extended to several persons or things, and words importing the plural number only may be applied to one person or thing and words importing the masculine gender only may be extended to females."

K.S.A. 77-201, *Third,* must be applied to K.S.A. 21-4101, as its application is not inconsistent with the intent of the legislature, nor is it repugnant to the context of the statute. Defendant was allegedly calling Skelton obscene names in a loud voice in a hallway of the Sedgwick County Courthouse, a public place. It was reasonably likely under such circumstances that other persons would be disturbed. Fortuitously, no one else heard the remarks, but this happenstance does not save defendant from criminal liability for his acts, if proven. Under the circumstances herein, the trial court erred in dismissing the complaint.

The judgment is reversed and the case is remanded.