No. 51,433

STATE OF KANSAS, *Appellant,* v. FRED M. HUFFMAN, JR., *Appellee.*

(612 P.2d 630)

Opin-
ion filed June 14, 1980.

*Ronald E. Whitten,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellant.

*Douglas D. Depew,* legal intern, argued the cause, and *Michael Kaye,* of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action wherein Fred M. Huffman, Jr. (defendant-appellee) was charged with the crimes of obstructing official duty (K.S.A. 21-3808) and disorderly conduct (K.S.A. 21-4101). At the close of the State's evidence the trial court sustained the defendant's motion to dismiss the charge of disorderly conduct on the ground K.S.A. 21-4101 was unconstitutional. After presentation of evidence by the defendant, the jury acquitted the defendant of the charge of obstructing official duty.

The State has perfected an appeal on that portion of the trial court's decision declaring K.S.A. 21-4101 unconstitutional. Appeal is pursuant to K.S.A. 1979 Supp. 22-3601(*b*)(2) and 22-3602(*b*)(1).

Although the facts are not necessary to determine the limited question here for review, they will be briefly stated.

On March 24, 1979, Topeka police officer Charles Walker received a report of juveniles drinking and causing a disturbance at the Rockin Robin, a tavern located at 1002 North Kansas Avenue, Topeka, Shawnee County, Kansas. Sergeant Michael Blodgett and Officer Edna Armstrong also received and responded to the disturbance report. The three officers entered the tavern together, apparently with Officer Walker in the lead. Officer Walker proceeded immediately to the bar and asked the barmaid about the reported juveniles and disturbance. The barmaid informed Officer Walker there was no disturbance and that no juveniles were present.

As the officers entered the tavern, and while Officer Walker questioned the barmaid, four men at the end of the bar made several comments which offended the police officers. At first, the men made "snorting" and "oink" sounds. Someone stated, "Well, here are the pigs." Officer Armstrong was referred to as a "female pig" and a "sow." The officers were also called "fucking pigs."

After Officer Walker talked with the barmaid and learned that she did not report a disturbance, Walker directed his attention to the men at the end of the bar. He approached the men, shined his flashlight on two of them, and asked if they had something they wanted to say. They made no comment. Officer Walker then demanded identification. At one point the appellee, Huffman,

told Officer Walker to "shut-up." Huffman also allegedly stated, "Fuck you, I don't have to give it [identification] to you," and "You're not the fucking gestapo, you don't have any right to do this." Huffman did not produce his identification until after the second or third request. Officer Walker testified that at one point during the identification check he made a comment to Huffman to the effect, "Listen, fuzz face, if I want something from you, I'll ask for it."

Officer Walker arrested Huffman "[d]ue to his language, the fact that it was causing a turmoil and also upsetting myself and the other officers present at the time." No juveniles were found in the tavern; Huffman was 23 years old.

As Officer Walker walked Huffman out of the tavern, Huffman slammed the tavern door against Walker. The two men scuffled on the sidewalk just outside the door. At one point Sergeant Blodgett attempted to hold on to Huffman. Officer Walker finally subdued Huffman by striking him on the head with a flashlight. Huffman's resistance at the door, and the subsequent scuffle, formed the basis for the charge of obstructing official duty.

Count II charged the appellee with disorderly conduct, in the following words:

"On or about March 24, 1979, in the County of Shawnee and State of Kansas, FRED M. HUFFMAN, JR. did then and there unlawfully and willfully with knowledge or probable cause to believe that said acts will alarm, anger or disturb others, to-wit: Charles Walker, did use offensive, obscene or abusive language or engage in noisy conduct tending reasonably to arouse, alarm, anger or resentment in others, to-wit: Charles Walker."

The trial court determined the disorderly conduct statute, K.S.A. 21-4101, was unconstitutionally vague and overbroad. The trial court relied on the rationale of *Gooding v. Wilson,* 405 U.S. 518, 31 L.Ed.2d 408, 92 S.Ct. 1103 (1972).

The State presents two related issues in its brief on appeal, stating:

"I
"THE TRIAL COURT ERRED IN DECLARING K.S.A. 21-4101, THE KANSAS DISORDERLY CONDUCT STATUTE, TO BE IN VIOLATION OF THE UNITED STATES CONSTITUTION ON THE BASIS OF THE OVERBREADTH DOCTRINE.
"II
"EVEN IF FACIALLY OVERBROAD, K.S.A. 21-4101, SUBSECTION (c) CAN BE HELD CONSTITUTIONALLY VALID BY AUTHORITATIVELY RESTRICTING ITS APPLICATION TO NON-PROTECTED SPEECH."

After carefully considering the controlling cases and the principles involved in the State's appeal, we hold the trial court correctly described 21-4101 as overbroad. We use this opportunity, however, to authoritatively restrict the application of 21-4101(c) to speech which is not protected by the First Amendment.

The validity of K.S.A. 21-4101(a) and (b) is not before the court on this appeal. Furthermore, we need not determine whether the words of the appellee, Huffman, constituted non-protected speech.

K.S.A. 21-4101 reads:

"Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other breach of the peace:

"(a) Engaging in brawling or fighting; or

"(b) Disturbing an assembly, meeting, or procession, not unlawful in its character; or

"(c) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

"Disorderly conduct is a class C misdemeanor."

This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before a statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. See *State v. Meinert,* 225 Kan. 816, 817, 594 P.2d 232 (1979), and cases cited therein.

While closely related, overbreadth and vagueness are distinct concepts. An overbroad statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. A vague statute leaves persons of common intelligence to guess at its meaning and whether particular conduct is a crime. See *State v. Stauffer Communications, Inc.,* 225 Kan. 540, 545-47, 592 P.2d 891 (1979), and cases cited therein.

In *Gooding v. Wilson,* 405 U.S. 518, the United States Supreme Court relied principally upon the overbreadth doctrine to find a Georgia statute facially unconstitutional. Ga. Code Ann. 26-6303 provided that, "[a]ny person who shall, without provocation, use to or of another, and in his presence . . . opprobrious words or abusive language, tending to cause a breach of the

peace . . . shall be guilty of a misdemeanor." The court found the statute was not drawn with the required narrow specificity to prohibit only a limited class of speech not protected by the First Amendment. In addition, the Georgia Supreme Court was said not to have authoritatively construed the statute to punish only a "constitutionally unprotected class of words— 'fighting' words— 'those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" *Gooding,* 405 U.S. at 522, quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 86 L.Ed. 1031, 62 S.Ct. 766 (1942).

Certain fundamental principles chart the permissible course for government regulation of speech. The First Amendment guarantee of freedom of speech forbids the States to punish use of language and words except in certain "narrowly limited classes of speech." *Chaplinsky v. New Hampshire,* 315 U.S. at 571. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *N.A.A.C.P. v. Button,* 371 U.S. 415, 433, 9 L.Ed.2d 405, 83 S.Ct. 328 (1963). Limited categories of speech which are not protected by the First Amendment include: Fighting words—*Chaplinsky v. New Hampshire,* 315 U.S. 568; obscenity—*Miller v. California,* 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607 (1973), and *Roth v. United States,* 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957); libel—*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L.Ed.2d 789, 94 S.Ct. 2997 (1974), and *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964); and incitement—*Brandenburg v. Ohio,* 395 U.S. 444, 23 L.Ed.2d 430, 89 S.Ct. 1827 (1969), and *Feiner v. New York,* 340 U.S. 315, 95 L.Ed. 295, 71 S.Ct. 303 (1951).

In *Lewis v. City of New Orleans,* 415 U.S. 130, 39 L.Ed.2d 214, 94 S.Ct. 970 (1974), the court held a Louisiana statute facially overbroad. The statute made it an unlawful breach of the peace "wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to" on-duty city police. *Lewis,* 415 U.S. at 132. The statute was fatally defective because the Louisiana Supreme Court had not authoritatively construed the statute's proscription to apply only to fighting words. The United States Supreme Court held that "opprobrious language" embraced words which would not "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Lewis,*

415 U.S. at 133. The Louisiana statute, like the Georgia statute in *Gooding,* was "susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments." *Lewis,* 415 U.S. at 134.

Two cases from other jurisdictions lend support to the conclusion that K.S.A. 21-4101 is facially overbroad. In *Matter of Welfare of S.L.J.,* 263 N.W.2d 412 (Minn. 1978), a Minnesota disorderly conduct statute was found to be overbroad. The Minnesota statute was the model for K.S.A. 21-4101. See Judicial Council Comment (K.S.A. 21-4101). The Minnesota Supreme Court stated:

"Turning to the language of the statute, it is clear that, as written, 609.72, subd. 1(3), is both overly broad and vague. Since the statute punishes words alone—'offensive, obscene, or abusive language'—, it must be declared unconstitutional as a violation of the First and Fourteenth Amendments unless it only proscribes the use of 'fighting words.' Section 609.72, subd. 1(3), however, punishes words that merely tend to 'arouse alarm, anger, or resentment in others' rather than only words 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' Since the statute does not satisfy the definition of 'fighting words,' it is unconstitutional on its face." 263 N.W.2d at 418-19.

The Alaska Supreme Court in *Marks v. City of Anchorage,* 500 P.2d 644, 649 (Alaska 1972), held an Anchorage city ordinance unconstitutionally overbroad, stating:

"The Anchorage ordinance prohibits 'threatening and violent or tumultuous behavior', 'unreasonable noise', 'abusive language' and 'offensively coarse utterances, gestures or displays' when motivated by an intent to cause 'public inconvenience, annoyance or alarm.' Reference to Webster's International Dictionary indicates that the ordinance thereby makes it a crime for one, with intent to cause public embarrassment, uneasiness, annoyance, discomfort or fear, to engage in conduct that is noisy, disorderly, causing or evidencing mental or emotional excitement, or, with like intent, to use language that is vulgar, indelicate, distasteful, insulting or reproachful. Neither the federal nor Alaska constitutions will permit such a broad and arbitrary interference with freedom of speech. Public life in our democracy would be robbed of its vitality and our citizens soon lose their self-confident independence of thought if such an ordinance were enforced to eliminate any mode of speech not acceptable to the most squeamish of our citizens."

The State contends 21-4101 has been authoritatively construed to apply only to fighting words, and does not proscribe protected speech. We disagree. Our prior decisions discussing 21-4101 and its predecessor, K.S.A. 21-950 (Corrick), have not limited the application of the statute to only fighting words. As recently as *State v. Polson,* 225 Kan. 821, 822, 594 P.2d 235 (1979), we

broadly referred to the appellant's language as "offensive, obscene and abusive by any standard one might seek to apply." In *State v. Cleveland*, 205 Kan. 426, 430, 469 P.2d 251 (1970), we determined "the language used was quite sufficient to create an incident or a riotous condition." However, we favorably cited several cases "holding that indecent language alone may constitute a breach of the peace."

We are cognizant of our responsibility to uphold the constitutionality of state statutes whenever possible. A statute which is facially overbroad may be authoritatively construed and restricted to cover only conduct which is not constitutionally protected, and as so construed the statute will thereafter be immune from attack on grounds of overbreadth. *State v. Stauffer Communications, Inc.*, 225 Kan. at 547. The State reminds us the Minnesota Supreme Court in *Matter of Welfare of S.L.J.*, 263 N.W.2d at 419, found the disorderly conduct statute overbroad, but authoritatively construed the statute to apply only to fighting words.

Rehabilitation of 21-4101 fulfills our responsibility. K.S.A. 21-4101 can withstand constitutional challenge for overbreadth when authoritatively construed to prohibit speech within the limited category of fighting words.

When narrowly construed, 21-4101 also withstands the second constitutional challenge asserted by the appellee. The appellee contends the statute is vague and indefinite on its face. Unconstitutional vagueness was the second, subordinate basis of both the holding in *Gooding v. Wilson*, 405 U.S. at 518, and the trial court ruling in the instant case.

The test to determine whether a criminal statute is unconstitutionally vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. See *State v. Meinert*, 225 Kan. at 817; *State v. Stauffer Communications, Inc.*, 225 Kan. at 546; *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977).

The appellee claims both the *mens rea* portion of 21-4101 and subsection (*c*) are vague and indefinite. The prefatory language of the statute includes the words "alarm, anger or disturb others."

K.S.A. 21-4101(c) prohibits "[u]sing offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others."

The appellee contends the words in 21-4101 are as vague and indefinite as the language considered in *State v. Meinert,* 225 Kan. at 817, "unjustifiable physical pain"; *State v. Kirby,* 222 Kan. at 4, "endangering of life"; and *City of Altamont v. Finkle,* 224 Kan. 221, 579 P.2d 712 (1978), "exhibition of speed or acceleration." The examples of vague language in the Kansas cases cited by the appellee are distinguishable. None of these cases dealt with vagueness in the context of free speech and overbreadth; nor did the cases involve rehabilitation of a statute by authoritative construction on appeal.

The appellee claims we should follow *Marks v. City of Anchorage,* 500 P.2d at 652-53. The Alaska Supreme Court held the Anchorage ordinance unconstitutionally vague, as well as overbroad. The *mens rea* portion of the Anchorage ordinance included the words "inconvenience, annoyance or alarm." The body of the ordinance included the words "tumultuous behavior," "unreasonable noise," "abusive language," and "offensively coarse utterances, gestures or displays." *Marks v. City of Anchorage,* 500 P.2d at 645. See also *State v. Echelbarger,* 54 Ohio Misc. 29, 376 N.E.2d 981 (1977). The Alaska and Ohio cases are also distinguishable. The challenged statutes were not narrowly construed to apply only to fighting words.

Narrow construction of 21-4101, to apply to fighting words, removes any possible vagueness residing in the *mens rea* portion of the statute or in 21-4101(c). Persons of common intelligence need not guess at the meaning of the words "alarm, anger or disturb," when used in conjunction with fighting words.

The State's appeal is sustained.

PRAGER, J., concurs in the result.