(682 P.2d 137)

No. 55,720

STATE OF KANSAS, *Appellee*, v. LENNY K. BECK, *Appellant*.

Opinion filed May 17, 1984.

*Simon C. Gonzalez,* and *David Melusky,* legal interns, and *Michael Kaye,* supervising attorney, all of Topeka, for the appellant.

*Arthur R. Weiss,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., PARKS and BRISCOE, JJ.

FOTH, C.J.: Defendant Lenny Beck appeals from his conviction after a bench trial of disorderly conduct. K.S.A. 21-4101. He contended at trial and contends on appeal that his conduct did not violate the statute because (a) the charge was based only on language, and the language he employed did not constitute "fighting words"; and (b) whatever he did took place in the confines of his own home and therefore is not covered by the statute.

The case was tried on stipulated facts, consisting primarily of the "probable cause" affidavit which accompanied the complaint and which was read into the record:

"On January 11, 1983, at approximately 1:59 a.m., Officer Campbell was dispatched to 217 The Drive, Topeka, Shawnee County, Kansas. Upon arrival, Officer Campbell met with Officer Berry and went to the rear of the residence. At that time, Officer Campbell then observed an individual, later identified as Lenny K. Beck, on the 2nd floor landing. At that time, Mr. Beck said to Officer Campbell, 'What the fuck are you doing here?' Officer Campbell advised Mr. Beck that they were called to a disturbance. Mr. Beck then said, 'Come up here and I'll fuck with you.' The officers confronted Mr. Beck and could smell a moderate amount of alcohol upon his person. At that time, Penny A. Rice told officers that she was having a domestic problem with Mr. Beck. Mr. Beck started to become abusive toward Ms. Rice and ordered Officer Berry and Officer Campbell to leave the premises. Officer Campbell then told Mr. Beck that they could stay there as long as Ms. Rice wanted them to. Mr. Beck then said, 'Fuck you' towards Officer Campbell. At that time Officer Campbell placed Mr. Beck under arrest for the use of fighting words under Topeka City ordinance. After a brief struggle and placing handcuffs on Mr. Beck, officers led Mr. Beck outside and at that time, Beck expectorated in Officer Berry's face.

"Mr. Beck was then taken to the rear of Officer Campbell's police vehicle. At that time, Mr. Beck kicked and broke the rear taillight on Officer Campbell's patrol vehicle. At no time did Mr. Berry consent to Mr. Beck spitting in his face. At no time did the officers consent to Mr. Beck using abusive language toward them. All the events occurred in Shawnee County, Kansas."

## Defendant added the following stipulated facts:

"Your Honor, we have agreed to enter the fact that Mr. Beck, during the course of this domestic disturbance did seek assistance, social services assistance by calling the Can Help organization and that following that . . . that organization called the police and 3 police officers arrived at the scene; and in addition Mr. Beck had been intoxicated at the time."

Counsel presented oral arguments to the court and rested.

In a letter decision the trial court found that defendant's comments were fighting words prohibited by statute. It also rejected defendant's argument that fighting words must be uttered in a public place. The court placed defendant on probation for two years, and this appeal followed.

We turn first to the argument that disorderly conduct must occur in a public place. It is based largely on Kansas decisions under the predecessor of K.S.A. 21-4101(c), which prohibited willful conduct that disturbed the peace, K.S.A. 21-950 (Corrick), repealed 1969. Defendant finds additional support for his conclusion in the fact that K.S.A. 21-4101 is based upon the Minnesota Criminal Code § 609.72, which specifically proscribes dis-

orderly conduct "in a public or private place." Because our statute omits that language, defendant argues the Kansas legislature intended K.S.A. 21-4101, as found in Article 41, Crimes Against the Public Peace, to not include the use of abusive language in a private residence.

Defendant's argument ignores the language in K.S.A. 21-4101(c) which prohibits conduct which alarms, angers or disturbs "others." Our Supreme Court has interpreted "others" in the present statute to include the situation where there is only one listener. *State v. Polson,* 225 Kan. 821, 594 P.2d 235 (1979). If it is enough that a defendant's conduct disturbs only one other person, we cannot see how it matters whether that person is in a public or private place. Despite its location in the Criminal Code among crimes against the public peace, there is no requirement in the statute that the general public be disturbed or that there be a danger of public disturbance. Clearly, a person can be disturbed or become alarmed and annoyed to the point of violence while in the private residence of another, and the legislature may deem that a sufficient evil to proscribe. Since K.S.A. 21-4101 does not on its face restrict the offense to public places, the legislative intent appears to be to include conduct occurring within a private residence. We therefore hold that disorderly conduct is an offense which may be committed in either a public or private place.

Defendant's primary argument is based on the requirement that if words alone are to be punished they must be "fighting words" as defined in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 86 L.Ed. 1031, 62 S.Ct. 766 (1942). The requirement is recognized in *State v. Huffman,* 228 Kan. 186, 612 P.2d 630 (1980); and *State v. Heiskell,* 8 Kan. App. 2d 667, 666 P.2d 207 (1983). In the present context, to be fighting words defendant's language must have been such as to tend to incite an assault or other immediate breach of the peace by the officers to whom they were addressed.

In arguing that they were not such words defendant stresses the fact that the addressees were police officers, who were presumably accustomed to such language or worse, and are trained to restrain their natural impulse to retaliate when insulted. We reject any *per se* rule for police officers. In *Chaplinsky* itself the insults were addressed to officers, but the Court

noted that, "Argument in unnecessary to demonstrate that the appellations 'damned racketeer' and 'damned Fascist' are epithets likely to provoke the *average person* to retaliation, and thereby cause a breach of the peace." 315 U.S. at 574. Emphasis supplied. And in both *State v. Huffman,* 228 Kan. 186, and *State v. Heiskell,* 8 Kan. App. 2d 667, the offending words were addressed to police officers.

Other jurisdictions are divided on whether a higher degree of inflammatory language should apply when the police officer is the only offended listener. Those cases favoring a special standard include: *State v. Duhan,* 38 Conn. Supp. 665, 460 A.2d 496, 499 (1982); *State v. Nelson,* 38 Conn. Supp. 349, 448 A.2d 214 (1982); *Phillips v. State,* 314 So. 2d 619, 621-22 (Fla. App. 1975); *State v. John W.,* 418 A.2d 1097 (Me. 1980); *Diehl v. State,* 294 Md. 466, 451 A.2d 115 (1982); *City of Alamogordo v. Ohlrich,* 95 N.M. 725, 726, 625 P.2d 1242, 1243 (N.M. Ct. App. 1981); *State v. Yoakum,* 30 Wash. App. 874, 638 P.2d 1264, 1266 (1982).

Other jurisdictions have overlooked or refused to apply a special standard. *Bousquet v. State,* 261 Ark. 263, 548 S.W.2d 125 (1977); *Duncan v. United States,* 219 A.2d 110, 112-13 (D.C. 1966), *remanded on other grounds* 379 F.2d 148 (D.C. Cir. 1967); *Bolden v. State,* 148 Ga. App. 315, 251 S.E.2d 165, 166 (1978); *City of Little Falls v. Witucki,* 295 N.W.2d 243 at 245-46 (Minn. 1980); *City of St. Paul v. Azzone,* 287 Minn. 136, 177 N.W.2d 559 (1970); *City of St. Paul v. Morris,* 258 Minn. 467, 104 N.W.2d 902, 903 (1960), *cert. denied* 365 U.S. 815 (1961); *State v. Brown,* 62 N.J. 588, 303 A.2d 886, 888 (1973); *Lane v. Collins,* 29 Wis. 2d 66, 138 N.W.2d 264, 267 (1965).

We prefer the ultimate concept expressed by the Minnesota Supreme Court in *City of St. Paul v. Morris,* 258 Minn. at 468-69:

"While it is obvious that not every abusive epithet directed toward police officers would be sufficiently disturbing or provocative to justify arrest for disorderly conduct, there is no sound reason why officers must be subjected to indignities such as present here, indignities that go far beyond what any other citizen might reasonably be expected to endure."

Although the Minnesota court there dealt with conduct which embraced more than "fighting words," the quoted language implicitly recognizes that what is disorderly conduct depends upon the totality of the circumstances in any given case. Where

language is involved, the fact that the addressee is a police officer is only one factor to be considered.

Our own court expressed the same underlying concept in *State v. Stroble*, 169 Kan. 167, 217 P.2d 1073 (1950), under our former statute on disturbing the peace:

"What constitutes a disturbance of the peace and quiet of a person or neighborhood, or what constitutes rude behavior or disorderly conduct, depends upon the intention of the person uttering the language, the person to whom uttered, and all the surrounding facts and circumstances. All these elements are proper issues for the trier of the facts. (*City of Fort Scott v. Arbuckle*, 164 Kan. 49, 187 P.2d 348.) The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts, but acts and words *likely to produce violence to others.*" 169 Kan. at 170. Emphasis in original.

Unless it can be said that defendant's words were not fighting words as a matter of law, under *Stroble* the ultimate determination was a question of fact for the finder of fact. And *cf., State v. Heiskell*, 8 Kan. App. 2d at 670-71, where the issue was how to instruct a jury to make the identical determination.

In this case the trial court found that defendant's words were in fact fighting words, a finding presumably made in the light of all the circumstances. Significant among these were defendant's offer to fight ("Come up here and I'll fuck with you") addressed to the officers before they entered the apartment, his resistance to their efforts to restore tranquility to the domestic scene, and the provocative nature of the words themselves—all in addition to the fact that the addressees were police officers.

Our scope of review in such a case is well settled: Does the evidence, when viewed in the light most favorable to the prosecution, convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Pondexter*, 234 Kan. 208, 211-12, 671 P.2d 539 (1983). Applying that test here we cannot say no rational factfinder could have found defendant's words to be fighting words when uttered under these circumstances.

Affirmed.