**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 25 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

BEATRIX MCKINNEY,

    Defendant - Appellant.

No. 00-3228
(D.C. No. 00-CR-40008-RDR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY, MCWILLIAMS**, and **JONES,**[**] Circuit Judges.

Ms. McKinney was convicted of disorderly conduct in violation of 18 U.S.C. § 13 and Kan. Stat. Ann. § 21-4101(c), and sentenced to one year's probation and attendance at an anger management program. On appeal, she argues that there was insufficient evidence to support her conviction. We have jurisdiction under 28 U.S.C. § 1291 and we reverse.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Nathaniel R. Jones, Circuit Judge, U.S. Court of Appeals, Sixth Circuit, sitting by designation.

## Background

In response to inquiries by a military police officer, Ms. McKinney twice told the officer to "go f*** himself." Ms. McKinney was charged with

> brawling or fighting; or using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger, or resentment in others, with knowledge or probable cause to believe that such acts will alarm, anger, or disturb others or provoke an assault or other breach of the peace, in violation of Title 18, United States Code, Section 13, and K.S.A. 21-4101.[1]

R. doc. 2. At trial, the magistrate judge concluded that Ms. McKinney's remarks constituted disorderly conduct under the circumstances. R. doc. 3, at 57-58. The district court affirmed the conviction for substantially the same reasons. R. doc. 9, at 5. We discuss other relevant facts as necessary for our disposition.

## Discussion

Section 21-4101(c) prohibits only fighting words. State v. Huffman, 612 P.2d 630, 635-36 (Kan. 1980). Accordingly, Ms. McKinney's conviction can

---

[1] K.S.A. § 21-4101(c), made applicable to military bases by 18 U.S.C. § 13, provides in pertinent part:

> Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other breach of the peace:
> . . . .
> (c) Using offensive, obscene, or abusive language or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.

stand only if her remarks would have "provoke[d] the average person to retaliation, and thereby cause[d] a breach of the peace." Chaplinsky v. New Hampshire , 315 U.S. 568, 574 (1942).

Ms. McKinney contends that there was insufficient evidence to support her conviction. We review the evidence adduced at trial de novo in the light most favorable to the government. United States v. Sanders , 240 F.3d 1279, 1281 (10th Cir. 2001). We also consider the totality of the circumstances surrounding Ms. McKinney's conduct and remarks. State v. Beck , 682 P.2d 137, 140 (Kan. Ct. App. 1984) . One of those circumstances is that a police officer is involved, and while police officers are expected to display patience and restraint, they are not required to endure "'indignities that go far beyond what any other citizen might reasonably be expected to endure.'" Id. (quoting City of St. Paul v. Morris , 104 N.W.2d 902, 903 (Minn. 1960)). That said, we agree that no rational trier of fact could have found Ms. McKinney guilty beyond a reasonable doubt.

The officer encountered Ms. McKinney during his routine patrol of the stable grounds on Fort Riley in Kansas. R. doc. 3, at 6. While he was checking some equipment, Ms. McKinney approached him in her vehicle. The officer testified that "[s]he was coming at such a high rate of speed, it was causing the vehicle to bounce, jump, and when she approached my location, she slammed on the brakes, and the vehicle continued forward and she slid probably a quarter turn

to the right." Id. at 7-8. The officer moved behind his own vehicle for protection. Id. at 8. Ms. McKinney then exited the vehicle and accused the officer of having urinated on some equipment. Id. at 7-10. The officer denied having done so, and asked Ms. McKinney who she was and whether she worked at the stables. Id. at 10. Ms. McKinney was non-responsive. Id. at 12. The officer repeated his inquiry several more times. Ms. McKinney then told the officer to "go f*** [him]self." She locked her vehicle and walked to a nearby telephone, purportedly to call the officer's commander.

When Ms. McKinney returned, the officer again asked Ms. McKinney whether she worked at the stables. Id. at 14. She replied that she did not, but that her horses were kept in the stables. Perhaps encouraged by this responsive answer, the officer again asked Ms. McKinney to identify herself. McKinney again told the officer to "go f*** [him]self," and told the officer that she would not give the officer "a damned thing." Ms. McKinney then left in her vehicle at a high rate of speed and stopped at another telephone, where the officer and another officer arrested her for disorderly conduct. Id. at 15-17.

Though tasteless and undoubtedly offensive to many, Ms. McKinney's language would not provoke the average person to retaliate under the circumstances. Ms. McKinney did not threaten or offer to fight the officer. She left the officer's presence both times after telling the officer to "go f***

himself." Furthermore, there was no evidence adduced at trial that a reasonable person or officer would react violently to "execrations like that uttered" by Ms. McKinney. Cohen v. California, 403 U.S. 15, 23 (1971). Under Kansas law, a defendant may not be convicted under this statute based upon "language [that] was simply offensive and angered others." State v. Heiskell, 666 P.2d 207, 211 (Kan. Ct. App. 1983); see also Guffey v. Wyatt, 18 F.3d 869, 872 (10th Cir. 1994). Rather the words must be "of such a character that their very utterance caused injury or that they tended to incite the listener to an immediate breach of the peace." Heiskell, 666 P.2d at 211.

Ms. McKinney's remarks were the R-rated equivalent of other commonly used phrases, such as "buzz off," "go away," "leave me alone," and "get lost." Those phrases certainly would not provoke a reasonable person to violence. Though her lack of civility may be disheartening, Ms. McKinney has a constitutional right to voice her objections to the officer's inquiries. See City of Houston v. Hill, 482 U.S. 451, 461 (1987); Norwell v. Cincinnati, 414 U.S. 14, 16 (1973); Guffey, 18 F.3d at 872.

We have considered the totality of the circumstances, including the fact that Ms. McKinney approached and departed from the officer in her vehicle in a reckless and dangerous manner. The district court accorded this conduct undue weight. Ms. McKinney approached the officer because she believed he had

urinated on some equipment. This was not the reason why she told the officer to "go f*** himself." She made those remarks only after some time had passed and the officer repeatedly demanded that she identify herself. The manner in which Ms. McKinney departed from the officer in her vehicle is of no significance. Finally, Ms. McKinney left the officer's presence each time after telling the officer to "go f*** himself," diffusing the provocative nature of her remarks.

Finally, Beck is readily distinguishable. In Beck, the defendant actually challenged the police officers to a fight. After the officers arrived at the defendant's residence, the defendant stated, "Come up here and I'll f*** with you." 682 P.2d at 138. This challenge to fight, along with "his resistance to [the officers'] efforts to restore tranquility to the domestic scene, and the provocative nature of the words themselves - - all in addition to the fact that the addressees were police officers," was sufficient to affirm the defendant's conviction for using fighting words. Id. at 140. By way of contrast, Ms. McKinney did not challenge the officer to a fight or otherwise provoke retaliation.

REVERSED.

Judge McWilliams dissents.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge