(638 P.2d 347)
No. 52,244

CITY OF FREDONIA, KANSAS, *Plaintiff-Appellee,* v. CHANUTE TRIBUNE, CHANUTE, KANSAS, *Defendant-Appellant.*

Opinion filed December 17, 1981.

*W. Y. Chalfant,* of Branine, Chalfant & Hyter, of Hutchinson, for appellant.

*Steven W. Rogers,* of Fredonia, for appellee.

Before JUSTICE HOLMES, presiding; MEYER, J.; and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: The defendant appeals from a conviction of "littering" under a city ordinance after a shopper paper printed by defendant was thrown on the lawn of a resident who had notified defendant that he did not want to receive it.

Defendant publishes a newspaper in Chanute, Kansas. In addition, since 1969, it has published a weekly paper called the *Southeast Kansas Weekly,* commonly known as a "shopper." The shopper is created by dropping the front page, the editorial page, comic page, and the local page of the *Chanute Tribune* and replacing same with various kinds of paid advertising, and it is thrown free-of-charge on the lawns of several communities, including Fredonia, Kansas.

In time, a problem arose in the City of Fredonia, where a

number of residents complained to the City. We have not been given any details of the events preceding the complaint involved herein, or the extent and duration of the particular problem, except as hereinafter set out. It was stipulated that in 1978, when the problem was called to the attention of defendant that some residents did not want to receive the shopper, a plan was devised whereby a resident could notify the defendant, either by telephone or by use of a printed insert in the paper, and request that the paper not be thrown to him any more.

The complaining witness in this case, Rodger Shinn, so notified defendant. Notwithstanding, the shopper was again thrown on his lawn. Mr. Shinn then filed a complaint against defendant in the municipal court of Fredonia, and defendant was summoned to appear before the court. After a trial, defendant was found guilty of violating a city ordinance and fined $50.00. Defendant promptly appealed to the district court. After a brief evidentiary hearing, which was apparently not reported, the matter was submitted to the court on an agreed statement of facts and briefs. This agreed statement of facts is not a part of the record before us; however, the parties have set forth in their respective briefs a statement of the facts each considers essential and we must conclude that these are the evidentiary facts presented to the trial court. The district court affirmed the judgment of the municipal court, hence this appeal.

The pertinent parts of the ordinance involved, insofar as this appeal is concerned, are as follows:

"LITTERING. It shall be unlawful for any person to dump, throw, place, deposit or leave, or cause to be dumped, thrown, placed, deposited or left in, on, or about . . . any private property, any dirt, filth, sewage, sweepings, dump ashes, tin cans, bottles, glass, paper, rags, tree cuttings, garbage, or other refuse of any kind, except . . . with the consent of the owner or occupant where private property is involved."

Plaintiff does not quarrel with defendant's claim that in printing and distributing its shopper it enjoys First Amendment protection. Undoubtedly, the shopper is a form of "speech" which enjoys the protection of the First Amendment to the United States Constitution. It is settled that such protection extends not only to political and religious expression but to commercial print as well. *Bates v. State Bar of Arizona,* 433 U.S. 350, 53 L.Ed.2d 810, 97 S.Ct. 2691 (1977); *Bigelow v. Virginia,* 421 U.S. 809, 44 L.Ed.2d 600, 95 S.Ct. 2222 (1975).

It is also clear, however, that the constitution accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 69 L.Ed.2d 800, 101 S.Ct. 2882 (1981); *Central Hudson Gas v. Public Service Comm'n,* 447 U.S. 557, 562, 65 L.Ed.2d 341, 100 S.Ct. 2343 (1980).

The specific issue here is whether the delivery of a shopper paper to an unwilling recipient, after notice not to do so, converts the paper, otherwise protected by the First Amendment, into litter which may be proscribed by the city.

It is defendant's position that freedom of speech and of the press requires no less than an absolute right to address the public on any subject desired, either orally or in print, unless there is a compelling state interest in regulating that speech in a reasonable manner. Defendant contends that no such compelling state interest is shown here, and that permitting an unwilling recipient to invoke the power of the state to invoke sanctions against the speaker or publisher in such a case is not a reasonable regulation and is therefore in violation of defendant's First Amendment rights.

The issue here, however, involves more than a simple delivery of a publication without prior solicitation or consent. Involved here is a continued delivery by throwing a paper onto private property *after notice not to do so.*

Plaintiff's contentions are not new. In *Martin v. Struthers,* 319 U.S. 141, 87 L.Ed.2d 1313, 63 S.Ct. 862 (1943), a Jehovah's Witnesses case, the ordinance involved prohibited door-to-door distribution of handbills and other literature and the ringing of doorbells or otherwise summoning the occupant to receive written or oral speech on any matter. In holding the ordinance to be unconstitutional, Justice Black stated:

"The right of freedom of speech and press has broad scope. The authors of the First Amendment knew that novel and unconventional ideas might disturb the complacent, but they chose to encourage a freedom which they believed essential if vigorous enlightenment was ever to triumph over slothful ignorance. This freedom embraces the right to distribute literature, *Lovell v. Griffin,* 303 U.S. 444, 452, and necessarily protects the right to receive it. The privilege may not be withdrawn even if it creates the minor nuisance for a community of cleaning litter from its streets. *Schneider v. State,* 308 U.S. 147, 162. Yet the peace, good order, and comfort of the community may imperatively require regulation of the time, place and manner of distribution. *Cantwell v. Connecticut,* 310 U.S. 296, 304. . . . [319 U.S. at 143.]

. . . .

"Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas.

"Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. . . . A city can punish those who call at a home in defiance of the previously expressed will of the occupant . . . . In any case, the problem must be worked out by each community for itself with due respect for the constitutional rights of those desiring to distribute literature and those desiring to receive it, as well as those who choose to exclude such distributers from the home." 319 U.S. at 146-149.

The right of the government to punish those who enter private property to disseminate ideas "in defiance of the previously expressed will of the occupant" was reaffirmed in *Rowan v. Post Office Dept.*, 397 U.S. 728, 25 L.Ed.2d 736, 90 S.Ct. 1484 (1970). That case involved the validity of a federal statute which established a procedure whereby a person may require a mailer to remove his name from its mailing lists and to stop delivery of advertisements for " 'matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative.' " 397 U.S. at 730. In upholding the statute, the court, in an opinion by Chief Justice Burger, stated:

"In *Martin v. Struthers*, 319 U.S. 141 (1943), Mr. Justice Black, for the Court, while supporting the '[f]reedom to distribute information to every citizen,' *id.*, at 146, acknowledged a limitation in terms of leaving 'with the homeowner himself' the power to decide 'whether distributors of literature may lawfully call at a home.' *Id.*, at 148. Weighing the highly important right to communicate, but without trying to determine where it fits into constitutional imperatives, against the very basic right to be free from sights, sounds, and tangible matter we do not want, it seems to us that a mailer's right to communicate must stop at the mailbox of an unreceptive addressee.

"The Court has traditionally respected the right of a householder to bar, by order or notice, solicitors, hawkers, and peddlers from his property. See *Martin v. Struthers, supra; cf. Hall v. Commonwealth*, 188 Va. 72, 49 S.E.2d 369, appeal dismissed, 335 U.S. 875 (1948). In this case the mailer's right to communicate is circumscribed only by an affirmative act of the addressee giving notice that he wishes no further mailings from that mailer.

"To hold less would tend to license a form of trespass and would make hardly more sense than to say that a radio or television viewer may not twist the dial to cut off an offensive or boring communication and thus bar its entering his home.

Nothing in the Constitution compels us to listen to or view any unwanted communication, whatever its merit   .   .   .   ." 397 U.S. at 736-37.

Defendant argues that the ordinance in question restricts content since the judgment of the individual householder whether to willingly accept the publication is necessarily based on content, and that content restrictions have clearly and consistently been declared unconstitutional. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 33 L.Ed.2d 212, 92 S.Ct. 2286 (1972). The ordinance itself, however, is neutral in content. The decision whether to accept delivery is left to the individual householder, and he is free to reject the publication "whatever its merit." 397 U.S. at 737.

Defendant also relies on *Consolidated Edison v. Public Serv. Comm'n,* 447 U.S. 530, 65 L.Ed.2d 319, 100 S.Ct. 2326 (1980), where the court held invalid an order of the New York Public Service Commission prohibiting the inclusion of inserts with Consolidated Edison's monthly bills which discussed political matters, including the desirability of nuclear power. One of the grounds asserted as justifying the order was that the inserts intruded on individual privacy by forcing Consolidated Edison's views on a captive audience. In rejecting this argument, the Court stated:

"The customer   .   .   .   may escape exposure to objectionable material simply by transferring the bill insert from envelope to wastebasket." 447 U.S. at 542.

Similarly, defendant contends herein that if a recipient does not want the paper, it is but a short trip from the lawn to the wastebasket to dispose of it, and there are civil remedies available to relieve the unwilling recipient from even that small effort. Defendant also suggests that the alternative would impose such an unreasonable burden upon it as to effectively deny defendant of its First Amendment protection.

The case before us does not involve a claim of captive audience. See *Cohen v. California,* 403 U.S. 15, 29 L.Ed.2d 284, 91 S.Ct. 1780 (1971); *Kovacs v. Cooper,* 336 U.S. 77, 93 L.Ed. 513, 69 S.Ct. 448 (1949). Nevertheless, we perceive of no reason crucial to defendant's First Amendment rights that would require a householder to retrieve an unwanted paper from his lawn and dispose of it, no matter how aggravating to him, rather than require the defendant to respect the householder's prior request to stop throwing the paper on his lawn.

Nor does the record before us disclose any competent evidence supporting defendant's suggestion that its distribution of the newspaper cannot be controlled by traditional methods and that such a requirement would impose an unreasonable burden upon it in derogation of its First Amendment protection.

We note also that the court, in *Consolidated Edison,* went on to indicate that if the State had a legitimate interest in protecting consumers from overly intrusive material:

"[I]t is possible that the State could achieve its goal simply by requiring Consolidated Edison to stop sending bill inserts to the homes of objecting customers. See *Rowan v. Post Office Department, supra."* 447 U.S. at 542, n. 11.

There is nothing in *Consolidated Edison,* in our view, which indicates a retreat from the Supreme Court's consistent holdings that the government may punish an intrusion onto private property, even for the delivery of otherwise protected speech, "in defiance of the expressed will of the occupant." 319 U.S. at 148.

Lastly, defendant argues that the ordinance involved is unconstitutionally vague because "no one reading this ordinance would imagine that it could or would be applied to printed matter distributed door to door," particularly as applied to the shopper which "far from being litter . . . carries news and messages considered of worth by many if not most."

Insofar as the complaining witness was concerned, however, the paper was worthless to him and when thrown on his lawn contrary to his expressed desire, it constituted "paper" and "litter" which he was compelled to dispose of.

In *State v. Huffman,* 228 Kan. 186, 612 P.2d 630 (1980), the court stated:

"This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." Syl. ¶ 1.

"The test to determine whether a criminal statute is unconstitutionally vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." Syl. ¶ 5.

The ordinance makes it unlawful to throw, or cause to be

thrown, any paper or litter onto private property except with the consent of the occupant. We conclude the ordinance conveys a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice, and is not unconstitutionally vague.

The ordinance proscribes delivery of the materials described therein to private property "except . . . with the consent of the owner or occupant." Although not directly addressed in the arguments, defendant in its brief speaks of the ordinance as proscribing delivery "without prior solicitation." Such an interpretation would prohibit the delivery of any handbill or paper to private property without prior consent and would undoubtedly violate the First Amendment.

The ordinance, as applied in this case, however, has been interpreted by the court to prohibit delivery of the paper to private property only after notice not to do so. As so applied and interpreted, the ordinance is not overbroad and should be upheld. *State v. Huffman,* 228 Kan. 186, Syl. ¶ 3.

The judgment of the trial court is affirmed.