(97 P.3d 513)
No. 91,403

STATE OF KANSAS, *ex rel.* STATE BOARD OF HEALING ARTS, *Appellant*, v. STEVEN L. THOMAS, *Appellee*.

74

Opinion filed September 17, 2004.

*Mark W. Stafford*, of Topeka, for appellant.

*Michael Oliver* and *James L. MowBray*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee.

Before GREEN, P.J., PIERRON and MALONE, JJ.

GREEN, J.: The State Board of Healing Arts (Board) appeals from the trial court's ruling in favor of Steven Thomas on the parties' cross-motions for summary judgment. The Board brought an action against Thomas seeking to enjoin him from attaching to his name the M.D. designation indicating that he engages in the treatment or diagnosis of human disease, illness, and injury. Although Thomas has been licensed by the Kansas Dental Board as a dentist, he has not been licensed by the Kansas Board of Healing Arts as a medical doctor.

On appeal, the issue is whether the trial court was correct in denying the injunction. The statutory scheme of the Kansas Healing Arts Act (Act) requires the issuance of an injunction when an unlicensed individual attaches the M.D. designation to his name. In reviewing the trial court's findings of fact and conclusions of law, we determine that the trial court misapplied the law and that an injunction should have been issued in this case. Nevertheless, the Act's statutory scheme as it relates to an unlicensed individual's use of the M.D. title is overbroad and should be narrowed. We find that the Act's regulatory scheme may constitutionally ban only those uses of the M.D. designation that may potentially mislead the public, patients, other health care practitioners, or hospitals concerning the user's licensed or unlicensed status. Accordingly, we reverse and remand to the trial court for an injunction consistent with this opinion.

The case comes before this court on a set of stipulated facts.

Since 1986, Thomas has been licensed with the Kansas Dental Board to practice dentistry in Kansas. Thomas is licensed by the Kansas Dental Board to treat and diagnose ailments, diseases and injuries of human beings' mouths, teeth, and jaws, to perform oral and maxillofacial surgery, and to prescribe medication and treat

medically all diseases of the oral and maxillofacial area. Thomas has admitting and treating privileges at Shawnee Mission Medical Center (SMMC) where he has been credentialed as a dentist and has privileges to perform oral surgery, maxillofacial surgery, and other appropriate surgeries.

In 1999, Thomas received a Doctor of Medicine degree from the University of Health Sciences Antigua (UHSA) in St. Johns, Antigua, West Indies. Thomas received this degree through an advanced standing program at UHSA where he spent 8 weeks on campus in Antigua. Thomas did not complete a postgraduate training program after receiving his Doctor of Medicine degree nor did he complete any part of either the Federation Licensing Examination (FLEX) or the United States Medical Licensing Examination (USMLE). He has not been licensed by the Board to practice any branch of the healing arts.

Despite not being licensed to practice the healing arts in Kansas, Thomas attaches the M.D. designation to his name. Specifically, he has identified himself by his name followed by the D.D.S. and M.D. designations on an application for renewal of his hospital privileges in dentistry and oral surgery at SMMC, an application for reappointment at SMMC, a list of conditions associated with his application for reappointment, and a list of covering physicians for his credentialing file at SMMC. Other items in which Thomas' name has been followed by the M.D. designation include a certificate of liability insurance issued to SMMC and a wallet card issued by the American Heart Association certifying completion of the advanced cardiac life support program.

Several documents and orders used in the care and treatment of Thomas' patient, B.T., identified Thomas by name followed by the designations of D.D.S. and M.D. These items included a history and physical evaluation, a progress note, an informed consent form, a history and physical report for SMMC, a partial list of standing orders for post-operative patient care regarding the patients at SMMC, a health insurance claim form prepared for an insurance company, and a dental claim form prepared for an insurance company.

In addition, Thomas distributes his business card to the public upon which his name is followed by the designations of D.D.S. and M.D. On his practice group's website, Thomas has a biographical page which states that he received his medical degree from UHSA but fails to disclose that he is not licensed to practice any branch of the healing arts in Kansas.

In February 2003, the Board brought an action against Thomas asking the trial court to declare that he unlawfully attaches to his name the M.D. designation indicating that he engages in the treatment or diagnosis of ailments, diseases, or injuries of human beings. The State requested that the trial court enjoin Thomas from such use. Dr. Thomas and the State filed cross-motions for summary judgment. The parties submitted a joint stipulation of facts. Throughout his argument, Thomas seizes upon the following statement made in the stipulated facts:

"The Board of Healing Arts does not allege and for purposes of this matter stipulates that Dr. Thomas has provided no false information to any member of the public, nor to any hospital or agency concerning his practice, nor the privileges given to him by the State of Kansas, nor by any hospital where he practices."

In addition to the stipulated facts, the parties informed the trial court that in July 2003, the Kansas Dental Board had approved the change of Dr. Thomas' corporate charter name from Corporate Lakes Surgery Center, Inc., to Steven L. Thomas, D.D.S., M.D., Chartered, "in accordance with provisions of law." Thomas then filed a certificate with the Kansas Secretary of State making this change to the articles of incorporation. The Board presented evidence indicating that the entity's original corporate purpose, which was to conduct an ambulatory surgical center, had not changed. Under K.S.A. 65-425(f), an ambulatory surgical center must have an organized medical staff of one or more physicians.

The trial court granted Thomas' motion for summary judgment and denied the State's request for a declaratory judgment and injunction.

*Jurisdiction*

First of all, Thomas challenges the jurisdiction of the Board. Thomas maintains that the Board only has jurisdiction to take dis-

ciplinary action against a licensee. As a result, because Thomas is not a licensee and has never sought a license, he contends the Board has no authority over him or his business.

It is undisputed that the Kansas Legislature, in the public interest and in furtherance of the general welfare, is empowered to regulate the profession of medicine. Consequently, the Legislature established the Kansas Healing Arts Act. K.S.A. 65-2801 *et seq.* The Legislature empowered the Board, among other things, to adopt regulations as may be reasonably necessary to administer the Act. K.S.A. 65-2828 and K.S.A. 65-2840a. In addition, the Legislature authorized the Board to seek injunctions against any person who has engaged or who is about to engage in conduct or practices which violate the Act. K.S.A. 65-2857.

Under the present Kansas licensing scheme, a medical doctor must satisfy rigorous educational, experience, and examination requirements before obtaining licensure. In explaining the purpose behind the Act in *Kansas State Board of Healing Arts v. Seasholtz,* 210 Kan. 694, 697, 504 P.2d 576 (1972), our Supreme Court stated:

"[T]he healing arts act is designed to protect members of the public against the unprofessional, the improper and the unqualified practice of the healing arts. Kansas has sought to attain this objective by requiring potential practitioners to be licensed, in the first instance, and by suspending or revoking the licenses of those who are later found to be incompetent or engaging in dishonorable, shady or unprofessional conduct. The purpose both of granting and of suspending or revoking a license is to eliminate the unscrupulous or incompetent doctor from practice of the healing arts."

Clearly, the Board's enforcement activities and jurisdiction extend to unlicensed persons holding themselves out to the public as persons licensed to engage in the treatment or diagnosis of ailments, diseases, or injuries of human beings. See K.S.A. 65-2857. As a result, Thomas' argument fails.

*Injunction*

The State challenges the trial court's decision to deny the injunction. Generally, we review the trial court's decision to grant or deny an injunction for abuse of discretion. *Empire Mfg. Co. v. Empire Candle, Inc.,* 273 Kan. 72, 85, 41 P.3d 798 (2002). In this

case, the trial court issued findings of fact and conclusions of law when denying the injunction. Where the district court has made findings of fact as a basis for its legal conclusions, the function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *U.S.D. No. 233 v. Kansas Ass'n of American Educators,* 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas,* 277 Kan. 171, 177, 83 P.3d 214 (2004).

The decision of whether to grant or deny an injunction under the facts of this case is controlled by various statutory provisions under the Act. "Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. [Citation omitted.]" *State v. Maass,* 275 Kan. 328, 330, 64 P.3d 382 (2003).

Moreover, because this case was submitted to the trial court on stipulated facts, we review the case de novo. See *In re Harris Testamentary Trust,* 275 Kan. 946, 951, 69 P.3d 1109 (2003). Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, this court has as good an opportunity to examine and consider the evidence as did the court below, and to determine de novo what the facts establish. Our review of the conclusions of law is unlimited. *Heiman v. Parrish,* 262 Kan. 926, 927, 942 P.2d 631 (1997).

We turn now to our review of the trial court's decision in this case. In denying the injunction, the trial court made the following findings of fact and conclusions of law:

"1) Steven L. Thomas is a dentist licensed by the State of Kansas.

"2) Steven L. Thomas has an 'M.D.' degree but is not a licensed medical doctor in the State of Kansas.

"3) Steven L. Thomas uses the 'M.D.' designation in a professional capacity.

"4) The use of the 'M.D.' designation by Steven L. Thomas has been authorized by the State of Kansas acting through the Dental Board and is therefore lawful.

"5) There exists no public harm from using the designation 'M.D.'

"6) Although Steven L. Thomas's professional corporation has a stated purpose of 'operating an ambulatory surgical center' he does not do so and this fact is not relevant to this decision.

"7) The procedures performed by Steven L. Thomas are exempt from the scope of authority of the Board of Healing Arts by the provisions of K.S.A. 65-2872(k).

"8) All of the procedures performed by Steven L. Thomas are authorized by his Kansas license to practice dentistry."

The trial court's decision of whether or not to issue an injunction here is controlled by statute. K.S.A. 65-2857 states:

"An action in injunction or quo warranto may be brought and maintained in the name of the state of Kansas to enjoin or oust from the unlawful practice of the healing arts, any person who shall practice the healing arts as defined in this act without being duly licensed therefor."

Thomas' practice of using the M.D. designation in this case is a clear violation of the Act. Under K.S.A. 65-2869, Thomas is deemed to be practicing medicine and surgery by his use of the M.D. designation. K.S.A. 65-2869 states in relevant part:

"For the purpose of this act the following persons shall be deemed to be engaged in the practice of medicine and surgery:

. . . .

"(c) Persons who attach to their name the title M.D., surgeon, physician, physician and surgeon, or any other word or abbreviation indicating that they are engaged in the treatment or diagnosis of ailments, diseases or injuries of human beings."

From this statute, we understand that an M.D. is someone "engaged in the treatment or diagnosis of ailments, diseases or injuries of human beings."

Under K.S.A. 65-2867(a), Thomas is prohibited from holding out to the public the authority or skill to practice medicine by the use of a professional degree or designation. This statute states:

"It shall be unlawful for any person who is not licensed under the Kansas healing arts act or whose license has been revoked or suspended to open or maintain an office for the practice of the healing arts as defined in this act or to announce or hold out to the public the intention, authority or skill to practice the healing arts as defined in the Kansas healing arts act *by the use of any professional degree or designation*, sign, card, circular, device, advertisement or representation." (Emphasis added.)

To protect members of the public from the unlicensed practice of medicine or surgery, K.S.A. 65-2867(a) prohibits the use by an unlicensed person of any professional degree or designation that is

likely to cause the public to believe that the unlicensed person is licensed. As a result, K.S.A. 65-2867(a) expressly prohibits the use by an unlicensed person of any designation that is likely to be confused with someone who is licensed to engage "in the treatment or diagnosis of ailments, diseases or injuries of human beings." K.S.A. 65-2869(c).

Thomas uses the M.D. designation on business cards that he distributes to the public. On his practice group's website, Thomas represents that he received his medical degree from UHSA but fails to disclose that he is not licensed to practice. In addition, Thomas changed the corporate name of his business to Steven L. Thomas, D.D.S., M.D., Chartered.

By using the M.D. designation when he holds himself out to the public, Thomas could mislead the public into believing that he is a licensed M.D. who is engaged "in the treatment or diagnosis of ailments, diseases or injuries of human beings." K.S.A. 65-2869(c). Thus, K.S.A. 65-2867(a) forbids such use of the M.D. designation.

In addition to attaching the M.D. designation to his name when holding himself out to the public, Thomas has used this title designation in patient records and communications to hospitals. K.S.A. 65-2803(a), in combination with 65-2869, prohibits an unlicensed individual from using the M.D. designation in this manner. K.S.A. 65-2803(a) states: "It shall be unlawful for any person who is not licensed under the Kansas healing arts act . . . to engage in the practice of the healing arts as defined in the Kansas healing arts act." As discussed above, under K.S.A. 65-2869, Thomas is deemed to engage in the healing arts by his use of the M.D. designation indicating that he is "engaged in the treatment or diagnosis of ailments, diseases or injuries of human beings." Because Thomas is not licensed to practice the healing arts in Kansas, his use of the M.D. designation violates K.S.A. 65-2803(a).

In denying the injunction, the trial court determined that "[t]here exists no public harm from using the designation 'M.D.' " In *Empire Mfg. Co.*, 273 Kan. at 86, our Supreme Court set forth the following four factors that a movant must show to obtain injunctive relief:

"(1) there is a reasonable probability of irreparable future injury to the movant; (2) an action at law will not provide an adequate remedy; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest."

The facts in *Empire* are distinguishable, however, because that case involved a breach of contract action where the trial court granted a temporary restraining order. There were no specific statutes that forbade the defendant's conduct and authorized injunctive relief as there are in the instant case. In *Mical Communications v. Sprint Telemedia*, 1 F.3d 1031, 1035 (10th Cir. 1993), the Tenth Circuit has stated: " 'When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown.' [Citations omitted.]" The Tenth Circuit went on to state that a plaintiff "need only show that the statutory conditions for the issuance of an injunction were met." 1 F.3d at 1036.

Applying the reasoning in *Mical* to the instant case, we determine that the Board was not required to establish that there was irreparable harm from Thomas' use of the M.D. designation. Instead, the Board was only required to show that Thomas was unlawfully practicing the healing arts without being licensed to do so. See K.S.A. 65-2857. Our analysis above reveals that the Board has satisfied this requirement.

Moreover, irreparable harm can be shown if Thomas is allowed to represent himself as an M.D. to the public, patients, hospitals, and other health care practitioners. The M.D. title has become widely known in the public as a professional designation representing years of medical study and training. Thomas' use of the M.D. designation could mislead the public to believe that his medical education and training is similar to that of a licensed M.D. when, in fact, he only has 8 weeks of medical training. In addition, health care practitioners rely on patient records and other communications made to a hospital. If Thomas were allowed to use the M.D. title, health care practitioners could give more authority to

his statements in these records and communications than is warranted for someone with Thomas' medical background.

Because Thomas' medical education and training is vastly inferior to that of licensed M.D.'s, Thomas' continued use of the M.D. designation in imitation of licensed M.D.'s diminishes the general esteem of the M.D. title. The Board has an obligation to protect the general esteem and reputation of the M.D. title. Moreover, Thomas intends to use the M.D. title without permission or license from the Board. Thomas' continued use of the M.D. designation, without a license, will clearly cause irreparable harm by misleading the public and hospital staff and by damaging the general esteem and reputation of such title.

Furthermore, the other three factors that must be shown before an injunction is issued have been satisfied. Specifically, an action at law will not provide an adequate remedy in this case because an injunction is the only method that will serve to protect the public and hospital staff from the misleading information. Although Thomas will suffer damage by not being able to use the M.D. designation after he attended an 8-week program, the potential harm that could be suffered by the recipients of this misleading information far outweighs this damage. Finally, we can definitively say that an injunction would only serve to protect the public interest.

We find that the trial court erred in its conclusion of law that no public harm exists from using the M.D. designation.

The trial court also determined that the procedures performed by Thomas are exempt from the Board's authority by K.S.A. 65-2872(k) and are authorized by his Kansas dentistry license. The trial court noted that Thomas uses the M.D. designation in his professional practice. The trial court further found that the M.D. title had been approved by the State acting through the Kansas Dental Board and is therefore lawful.

Although K.S.A. 65-2872(k) excludes from the Act dentists who are practicing their professions, the Board of Healing Arts solely has the authority to regulate an individual's use of the M.D. title. The M.D. designation indicates that a person is "engaged in the treatment or diagnosis of ailments, diseases or injuries of human beings." K.S.A. 65-2869(c). By using the M.D. designation, Tho-

mas has placed himself within the regulatory authority of the Board under the Act. The fact that all of the procedures performed by Thomas are authorized by his dentistry license does not change the decision as to whether an injunction should be issued in this case. The issue is whether Thomas has unlawfully used the M.D. designation under the Act. Because Thomas, as an unlicensed individual, has unlawfully attached the M.D. designation to his name, he has violated the Act, and an injunction should be issued.

Throughout his argument, Thomas points to the following stipulation made by the parties: "The Board of Healing Arts does not allege and for purposes of this matter stipulates that Dr. Thomas has provided no false information to any member of the public, nor to any hospital or agency concerning his practice, nor the privileges given to him by the State of Kansas, nor by any hospital where he practices."

Thomas maintains that by the Board stipulating that he has not provided false information to anyone, it has admitted that Thomas' use of the M.D. designation has not misled anyone. We do not interpret this stipulation in such a manner. It is undisputed that Thomas has an M.D. degree that he received after only 8 weeks of medical school training. The problem is that the public has come to associate this degree with many years of advanced training and clinical study similar to that possessed by a licensed physician. By seeing the M.D. initials after Thomas' name, the public, patients, hospitals, and other health care practitioners could be misled to believe that Thomas has the same sort of training and experience as a licensed medical doctor.

We determine that Thomas should be enjoined from using the title M.D. or any other word or abbreviation likely to be confused with the title M.D. in referring to himself, his businesses, or his services in the context of holding out to the public in the offering or in the rendering of professional services, or representing himself as an M.D. in any manner which would tend to mislead or confuse the public. As stated previously, the Legislature has required all persons using the designation M.D. to be licensed. Until Thomas is properly licensed, he should be enjoined from using the M.D. title on patient records and on communications with various hos-

pitals. In addition, he should be enjoined from displaying or referencing the M.D. designation where a patient may observe it.

*Constitutionality of the Act's Statutory Scheme*

Thomas contends that the proposed injunction in this case would violate his constitutional rights to freedom of speech and equal protection under the law.

In addressing Thomas' freedom of speech argument, we set forth our Supreme Court's guidance on this issue in *State v. Huffman*, 228 Kan. 186, 190, 612 P.2d 630 (1980):

"Certain fundamental principles chart the permissible course for government regulation of speech. The First Amendment guarantee of freedom of speech forbids the States to punish use of language and words except in certain 'narrowly limited classes of speech.' [Citation omitted.] 'Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.' [Citation omitted.]"

*Commercial Speech*

Commercial speech is one of those areas in which the United States Constitution accords a lesser protection than that given to other constitutionally guaranteed expression. *City of Fredonia v. Chanute Tribune*, 7 Kan. App. 2d 65, 67, 638 P.2d 347 (1981). The State may limit commercial speech that is fraudulent or deceptive. *Edenfield v. Fane*, 507 U.S. 761, 768, 123 L. Ed. 2d 543, 113 S. Ct. 1792 (1993). The restrictions on the advertisement of professional services "may be no broader than reasonably necessary to prevent the deception." *In re R.M.J.*, 455 U.S. 191, 203, 71 L. Ed. 2d 64, 102 S. Ct. 929 (1982).

Thomas contends that his use of the M.D. designation is not misleading on its face because he is truthfully advertising the fact that he earned the degree and does not claim to practice as a physician.

Citing *Help-U-Sell, Inc. V. Me. Real Estate Comm'n*, 611 A.2d 981, 984 (Me. 1992), the Supreme Court in *State v. Dhuy*, 825 A.2d 336, 342 (Me. 2003), stated: "When advertising presents information easily recognizable as misleading, evidence of consumer reaction is unnecessary to a finding of deception."

Here, Thomas' use of the M.D. designation was obviously misleading. The public has come to associate the M.D. title with 4 or more years of graduate work that includes training in a clinical facility followed by participation in a residency program. Thomas, however, had only 8 weeks of training before receiving his medical degree. Thomas' use of the M.D. designation presented a false impression to the public that he had a license to practice medicine and, therefore, was misleading. Therefore, the Board could impose appropriate restrictions on Thomas' commercial speech.

The Board also seeks to enjoin Thomas' uses of the M.D. designation when he is not engaged in commercial speech. For instance, Thomas attaches the M.D. designation to his name on documents used for patient records, when writing and signing orders for treatment, and in communications with hospitals. "Restrictions on free speech are valid only where necessary to protect compelling public interests and where no less restrictive alternatives are available. [Citation omitted.]" *State v. Alston*, 256 Kan. 571, 579, 887 P.2d 681 (1994). The Board points out that other health care practitioners relying on the patient record may not know that Thomas is an unlicensed medical doctor. The Board adds that the purpose of the medical records is to provide a chronological documentation of the patient's care and for planning and communicating between the patient's treating physician and other treating health care providers.

By attaching the M.D. title to his name in documents that are viewed by other health care practitioners, Thomas could mislead these practitioners to believe that he has the experience and training of a licensed medical doctor. As demonstrated by the Board, these practitioners could unjustifiably rely on representations made by Thomas based on his status as an M.D. This type of reliance could have ramifications for a patient who is being treated by these practitioners. Therefore, the Board's regulation of Thomas' use of his M.D. designation in representations made to other health care practitioners is necessary to protect these practitioners and their patients from misleading information. We find that the Board has met its burden to show a compelling government interest in reg-

ulating unlicensed individuals' use of the M.D. title in communications to hospitals and within patient records.

Thomas argues that if this court finds that the State could justifiably restrict his speech, a less restrictive solution would be in order such as requiring him to use a disclaimer indicating that he is not a licensed physician. Such a statement, however, would not cure the problem of providing misleading information. In order to not mislead the public, patients, hospitals, and other health care practitioners, an unlicensed individual who wishes to use the M.D. designation would have to disclose such information as the individual's length of education, amount of clinical training, whether or not the individual had completed a residency training program, and whether or not the individual had completed any of the examination requirements. Furthermore, the Board would need to verify this information in order to ensure that this information accurately portrayed the doctor's skills so that the public could be protected. It is simply not feasible to require the Board to research these credentials for each unlicensed individual.

*Constitutionality of K.S.A. 65-2803(a)*

The Board's regulatory scheme, however, also seeks to ban those uses of the M.D. designation that are not misleading. Under K.S.A. 65-2803(a), a person must be licensed under the Act to use the M.D. designation. In other words, no one is entitled to use the M.D. title unless he or she has a license. The Board implicitly concedes that this statute is facially overbroad. In its brief, the Board states that Thomas should be allowed to use the M.D. designation in "academic or social settings." Nevertheless, the literal reading of K.S.A. 65-2803(a) does not permit this use of the M.D. designation.

Citing *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 71-72, 697 P.2d 1310 (1985), this court in *DPR, Inc. v. City of Pittsburg*, 24 Kan. App. 2d 703, 717, 953 P.2d 231, *rev. denied* 264 Kan. 821 (1998), set forth the following overbreadth standard:

" 'An overbroad statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. [Citation omitted.] A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target and (2) there exists no satisfactory

method of severing that law's constitutionality from its unconstitutional applications. [Citations omitted.]' "

The criminal statute, K.S.A. 65-2803(a), in conjunction with 65-2869, prohibits an unlicensed individual from using the M.D. designation at any time. This statutory scheme also seeks to regulate constitutionally protected speech. For instance, under K.S.A. 65-2803(a), it would be unlawful for unlicensed individuals to attach the M.D. initials to their names in letters to friends and family members. K.S.A. 65-2803(a) makes such conduct subject to criminal sanctions. Because K.S.A. 65-2803(a), in combination with 65-2869, regulates such constitutionally protected speech, the statute is facially overbroad.

Recognizing that a facially overbroad statute can be limited to those areas which are not constitutionally protected, our Supreme Court in *Huffman*, 228 Kan. at 192, stated:

"We are cognizant of our responsibility to uphold the constitutionality of state statutes whenever possible. A statute which is facially overbroad may be authoritatively construed and restricted to cover only conduct which is not constitutionally protected, and as so construed the statute will thereafter be immune from attack on grounds of overbreadth. [Citation omitted.]"

We have previously determined that the State could regulate unlicensed individuals' use of the M.D. designation when the individuals are holding themselves out to the public, patients, hospitals, or other health care practitioners. As a result, K.S.A. 65-2803(a), as it applies to an unlicensed individual's use of the M.D. designation, should be limited to those areas in which the public, patients, hospitals, or other health care practitioners could be misled by the individual's M.D. designation.

We determine that the Board's regulatory scheme may constitutionally ban those uses of the term M.D. that may potentially mislead the public, patients, hospitals, or other health care practitioners regarding the user's licensed or unlicensed status.

*Equal Protection*

Thomas also contends that his equal protection rights are violated because the statutory scheme does not bear a reasonable relation to a legitimate state purpose. "Equal protection is impli-

cated when a statute treats 'arguably indistinguishable' classes of people differently." *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 251, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997).

Thomas concedes that a rational basis review is appropriate in this case. Thus, our inquiry is whether the statutory scheme is reasonably related to a conceivable legitimate purpose. See *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 256, 32 P.3d 1156 (2001). Based on our previous analysis, we find that restricting the use of the M.D. designation is rationally related to the legitimate State purpose of protecting the public, patients, hospitals, and other health care practitioners from misleading information indicating that a person is qualified to engage in the practice of medicine.

Reversed and remanded for an injunction in accordance with this opinion.