BYBEE, Circuit Judge,
dissenting:
Daniel Millis, motivated by humanitarian concerns, scattered plastic gallon-size water bottles with bright blue caps throughout the Buenos Aires National Wildlife Refuge in southern Arizona. When Millis *919 failed to pick up all of the bottles after Fish and Wildlife Service employees asked him to do so, he was cited for littering on a national wildlife refuge. 50 C.F.R. § 27.94(a). After a bench trial, a magistrate judge found Millis guilty of the charge, and the district court affirmed his conviction. The majority overturns his conviction on the grounds that the common meaning of the term “garbage” is “sufficiently ambiguous” to require invocation of the rule of lenity. I believe that the rule of lenity does not apply here because leaving plastic bottles in a wildlife refuge is littering under any ordinary, common meaning of the word.
I
The Buenos Aires National Wildlife Refuge is located in Arizona on the border between the United States and Mexico. In 1985, the Fish and Wildlife Service (“the Service”) purchased the area in order to restore the area’s grasslands and to protect endangered animals such as the pronghorn and the masked bobwhite quail. U.S. Fish & Wildlife Service, Buenos Aires National Wildlife Refuge, http://www.fws. gov/southwest/refuges/arizona/buenosaires/ history.html (last visited Aug. 5, 2010). Among other things, under the Refuge Improvement Act, 16 U.S.C. § 668dd(a)(4), the Service must (1) “provide for the conservation of fish, wildlife, and plants, and their habitats”; (2) “ensure that ... the environmental health of the System [is] maintained”; (3) “contribute to the conservation of the ecosystems”; and (4) “ensure that the mission of the System ... and the purposes of each refuge are carried out.” 16 U.S.C. § 668dd(a)(4)(A), (B), (C), (D). The Refuge Act also states that “[n]o person shall disturb, injure, cut, burn, remove, destroy, or possess any real or personal property of the United States, including natural growth, in any [refuge]; or ... enter, use, or otherwise occupy any such area for any purpose; unless such activities are performed by persons authorized” to do so. Id. § 668dd(c). In furtherance of this prohibition, the Service issued a regulation prohibiting anyone from “littering, disposing, or dumping in any manner of garbage, refuse sewage, sludge, earth, rocks or other debris on any national wildlife refuge.” 50 C.F.R. § 27.94(a).
In my view, the regulation readily encompasses the act of scattering water bottles in a wildlife refuge. Although the regulation is poorly drafted, it can be understood by persons of ordinary intelligence. The regulation forbids “littering” in the wildlife refuge or disposing of or dumping “garbage, refuse sewage, sludge, earth, rocks, or other debris.”[1] Id. § 27.94(a). I see no need to invoke the rule of lenity.
The rule of lenity is founded on the policy that “a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.” United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). We use the rule to aid us in interpreting an ambiguous statute by resolving doubt in *920 favor of the defendant. See id. at 348-49, 92 S.Ct. 515. The rule of lenity only applies “when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.” United States v. Hayes, — U.S.-, 129 S.Ct. 1079, 1089, 172 L.Ed.2d 816 (2009). “The simple existence of some statutory ambiguity ... is not sufficient to warrant application of th[e] rule [of lenity], for most statutes are ambiguous to some degree.... To invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute,” such that “after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.” Muscarello v. United States, 524 U.S. 125, 138-39, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (quotation marks, omission, and citations omitted).
Largely ignoring the term “littering,” the majority focuses instead on the term “garbage,” which it defines as “food waste” or “discarded or useless material” Maj. Op. at 917. The majority concludes that because the water in the bottles is “intended for human consumption,” the bottles have value, and, therefore, are not garbage. Maj. Op. at 917. The majority holds that “given the common meaning of the term ‘garbage,’ ... § 27.94(a) is sufficiently ambiguous in this context that the rule of lenity should apply.” Maj. Op. at 918.
I think the critical term here is not “garbage,” but “littering.” Millis’s citation was not for dumping garbage but for “littering in a National Wildlife Refuge.” Millis testified that wildlife refuge workers told them that leaving “water jugs on that trail ... constituted litter,” and that he was “going to be cited for littering.” Officer Kirkpatrick similarly testified:
I told [Millis] that placing water out on the refuge was littering. I explained to him that under the National Wildlife System Administration Act that was a class B misdemeanor and he could face up to six months in jail and/or five thousand dollars in fines for littering on a national wildlife refuge.
After Mills and those with him failed to pick up the jugs they had deposited, Officer Kirkpatrick “explained to them that [he] was going to cite them for littering at that point because [he] felt they had no intention of complying with [the Service’s] regulations.” Littering is not the same thing as dumping garbage. The two terms are sometimes used interchangeably, but (as long as we are using dictionaries) “littering” means “to strew with scattered articles,” and the example cited refers to one who “litters the scene with papers, boxes, [and cans.]” WEBSTER’S THIRD INTERNATIONAL DICTIONARY 1322 (2003). Such items may constitute garbage, but strewing an area with papers, boxes, and cans may be evidence of mere untidiness or, more appropriately here, items that — in context — are valuable to someone, but not to the person or entity controlling the area.
The First Amendment handbill cases supply a good example. We have struck down regulations that prohibited soliciting or leafleting in public fora on First Amendment grounds, despite the government’s position that such regulations were aimed at preventing littering. See Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); S.O.C., Inc. v. County of Clark, 152 F.3d 1136 (9th Cir. 1998). But we have never questioned the legitimacy of the government’s position that discarded leaflets were litter, no matter their potential First Amendment value. As the Supreme Court stated in Schneider, “the guarantee of freedom of speech ... [does not] deprive a municipality of power to enact regulations against throwing literature broadcast in the streets.... There *921 are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets.” Schneider, 308 U.S. at 150-51, 60 S.Ct. 146. Similarly, we observed in S.O.C. that “[c]ities and counties have a substantial interest in protecting the aesthetic appearance of their communities by avoiding visual clutter,” but found that this interest could not curb the protected activity of handing out pamphlets in public fora. S.O.C., 152 F.3d at 1146. The entity controlling the public forum has the authority to determine what constitutes litter, no matter its potential use to anyone else. See City of Fredonia v. Chanute Tribune, 7 Kan.App.2d 65, 638 P.2d 347, 351 (Kan.Ct.App.1981) (conviction for littering after a shopper paper was thrown on the lawn of a resident who had notified the paper he did not want to receive it: “Insofar as the complaining witness was concerned, however, the paper was worthless to him and when thrown on his lawn contrary to his expressed desire, it constituted ‘paper’ and ‘litter’ which he was compelled to dispose of.”). Likewise, the Service has the authority to determine what items, strewn in the underbrush of the wildlife refuge, are litter.
There is nothing remotely ambiguous about a regulation prohibiting littering in a wildlife refuge. Any item — whether a handbill advertising a land auction or a new high definition TV — brought into the wildlife refuge without the Service’s permission is litter, whether it has intrinsic value or not. It doesn’t belong on the wildlife refuge. The Service couldn’t have been more clear on this. There are no refuse containers on the wildlife refuge. Visitors to the area must abide by a familiar “pack in, pack out” policy, meaning that the Service expects visitors to pack out all of their personal belongings, including trash, when they leave the area. See Public Use Regulations: Buenos Aires National Wildlife Refuge, http://www.fws.gov/ southwest/refuges/arizona/buenosaires/ PDFs/Regulations% 20Flyer2006.pdf (last visited Aug. 5, 2010).
The anti-littering regulation applies whether the items were deposited intentionally or left inadvertently. Millis was intentionally depositing water jugs on trails in the wildlife refuge for illegal immigrants crossing into Arizona who were ill-prepared for the rigors of a desert crossing. But it wouldn’t matter if the items were really nice sleeping bags forgotten by the inattentive scouts of Troop 101. In the context of the wildlife refuge, plastic water bottles and sleeping bags are litter and inconsistent with conservation in the Buenos Aires National Wildlife Refuge.
II
Even if I thought that the key regulatory term was “garbage,” I would find the majority’s application of the dictionary definition to be problematic. The majority defines garbage as “discarded or useless material,” Maj. Op. at 917, but it focuses only on whether the bottles are “useless material.” The idea that garbage is “discarded,” however, comports with the everyday, common meaning of the term “garbage” and is essential to its definition because it avoids a purely subjective inquiry into the material’s usefulness.[2] When *922 Millis abandoned the water bottles in the wildlife refuge, he “discarded” the bottles according to the ordinary, everyday meaning of the word. The bottles are garbage because they are “discarded material,” no matter the bottles’ potential value.
The Supreme Court analyzed whether material with value could be considered “refuse” in United States v. Standard Oil Co., 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966). In Standard Oil, the government prosecuted the company for accidently discharging oil into a river under a statute that prohibited depositing “any refuse matter of any kind or description” in a body of water. Id. at 225, 86 S.Ct. 1427. The district court dismissed the indictment, reasoning that because the oil was valuable it could not be considered “refuse material” under the statute. The Supreme Court rejected the “narrow, cramped reading” of the term “refuse material” by the district court, and defined “refuse” as “anything which has become waste, however useful it may earlier have been.” Id. at 226, 229, 86 S.Ct. 1427. The Court concluded, “[o]il is oil and whether useable or not by industrial standards it has the same deleterious effect on waterways ... There is nothing more deserving of the label ‘refuse’ than oil spilled into a river. That seems to us to be the common sense of the matter. The word ‘refuse’ includes all foreign substances and pollutants.” Id. at 226, 229-30, 86 S.Ct. 1427. Similarly, “the common sense of the matter” here is that the bottles are “foreign substances and pollutants” in an area devoted to the conservation of habitats and the protection of delicate ecosystems. Once Millis abandoned the bottles in the wildlife refuge, they became garbage “whether useable or not” because the bottles were “deleterious” to the wildlife refuge.[3] Id. at 226, 86 S.Ct. 1427.
The majority suggests that the bottles are not garbage because the water in the bottles was “intended for human consumption.” Maj. Op. at 917 (emphasis added). But whether an item is “intended” to be useful is not a valid basis for determining whether the item is in fact useful.[4] Under *923 the majority’s definition, any number of objects (for example, sleeping bags, packaged food, clothing, flashlights, plastic bags, or shoes) can be left in the wildlife refuge without incurring liability under § 27.94(a) merely because someone thought that the discarded item might be useful to the next person passing through.[5] Even if we focus on the term “garbage,” there is nothing particularly ambiguous about the meaning of the regulation.
Ill
Even if I thought there was some wiggle room in understanding the common words “littering” and “garbage,” the majority has not properly applied the rule of lenity as a method of statutory construction. The rule of lenity is an aid to interpreting “grievously ambiguous” statutes and requires a court to resolve doubt in favor of the defendant. Dean v. United States, — U.S. — -, 129 S.Ct. 1849, 1856, 173 L.Ed.2d 785 (2009). It does not allow the court to merely reverse the conviction without offering some workable interpretation of the ambiguous term or statute. Here, the majority simply concludes, “,[t]he only question is whether the rule of lenity should be applied to the offense charged. We conclude that it does apply, and we reverse the judgment of the district court.” Maj. Op. at 918. Instead of interpreting the Service’s regulation in a way favorable to Millis, the majority simply concludes that the regulation is ambiguous — presumably because the bottles were intended for human consumption — and overturns the conviction. In doing so, the majority treats the regulation as if Millis had challenged it under the Due Process Clause as an unconstitutionally vague regulation.[6]
The rule of lenity “induce[s] Congress to speak more clearly and keeps courts from making criminal law in Congress’s stead.” United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008). But the majority would have the Service avoid using a term as common as “garbage” in its littering regulation. This is not what the rule of lenity requires. The rule of lenity “cannot dictate an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term.” Taylor v. United States, 495 U.S. 575, 596, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Here, the rule of lenity doesn’t lead to any interpretation at all.
In my view, both the Service and Congress have spoken clearly: Congress prohibited anyone from disturbing wildlife refuge land in any manner and doing any activity without authorization from the Service, see 16 U.S.C. § 668dd(c); in re *924 sponse, the Service promulgated a regulation that prohibited littering, disposing of, or dumping garbage in any manner in a wildlife refuge, see 50 C.F.R. § 27.94(a). Section 27.94(a) provides “a fair warning ... in language that the common world will understand,” Bass, 404 U.S. at 348, 92 S.Ct. 515, that littering plastic bottles throughout a wildlife refuge is prohibited.
I would hold that Millis “litter[ed] ... on [a] national wildlife refuge,” 50 C.F.R. § 27.94(a), and would affirm his conviction. I respectfully dissent.

. The regulation suffers from several grammatical challenges. The regulation begins with three gerunds listed in series — “littering, disposing, or dumping” — followed by an object introduced by a preposition — "of garbage, refuse sewage, sludge, earth, rocks or other debris." 50 C.F.R. § 27.94(a). “Littering,” however, does not really match the phrase that follows — it makes little sense to say "the littering ... of garbage, refuse sewage, sludge, earth, rocks, or other debris.” We don’t ordinarily think of littering in terms of sewage, sludge, or rocks. Moreover, the “of” before "garbage” doesn’t make sense; neither "littering” nor "dumping” requires it. The regulation was probably intended to read: “[L]ittering, or disposing of or dumping garbage, refuse sewage, [etc.] ... is prohibited.”

. Two courts that have had the occasion to define "garbage” or "waste” in a statute have emphasized the concept of the item being "discarded” over the item's value. In Waste Management Of the Desert, Inc. v. Palm Springs Recycling Center, Inc., 7 Cal.4th 478, 28 Cal.Rptr.2d 461, 869 P.2d 440 (1994), the California Supreme Court interpreted "waste” for the purposes of the California Integrated Waste Management Act of 1989 and held that "property is not ‘waste’ until it is discarded.” Id., 28 Cal.Rptr.2d 461, 869 *922 P.2d at 442. In Northern Illinois Service Company v. EPA, 381 Ill.App.3d 171, 319 Ill. Dec. 176, 885 N.E.2d 447 (2008), the Illinois court found that uprooted, dead trees were within the definition of litter under the Illinois Environmental Protection Act. The Act prohibited "the open dumping of any waste in a manner” that results in "litter,” and defined waste as "any garbage ... or other discarded material.” Using this definition, the court found that even though the trees had market value they were "other discarded material” under the Act and observed that "[wjhether an item has value has no bearing on whether it is discarded.” Id.., 319 Ill.Dec. 176, 885 N.E.2d at 452.

. If the Service did nothing to prevent the wildlife refuge from turning into an informal Goodwill donation center, it could be liable for failing to comply with the Refuge Act’s statutory requirement to protect the habitat, environmental health, and ecosystem of the area. See 16 U.S.C. § 668dd.

. Millis's intent, as benevolent as it may have been, is irrelevant to the validity of his conviction. He was convicted under a portion of the Refuge Act that does not require any proof of the defendant’s intent to violate the littering regulation. Penalties under the Refuge Act are divided into two groups. Any person who "knowingly” violates the Act, or a regulation promulgated under the Act, is fined or imprisoned for up to a year or both. 16 U.S.C. § 668dd(f)(1). "Any person who otherwise violates” the regulation, or who, for example, violates the regulation unknowingly, is fined or imprisoned for up to 180 days or both. Id. § 668dd(f)(2). Millis was convicted for “otherwise violating]” the littering regulation. Even if he did not think that the bottles were garbage or that he was littering, he could still be convicted of violating the regulation under the Act. There was no need to prove that he intended to litter in the wildlife refuge or that he intended the bottles to be garbage.

. At trial, Officer Kirkpatrick testified that "there was a great deal of trash on the refuge,” which consisted of "water bottles, backpacks, ... articles of clothing, foodstuffs, vehicles,” and “pretty much anything you can imagine.”

. States have summarily dismissed the argument that the terms "litter,” "garbage,” "waste,” or "refuse” are too vague to pass constitutional muster. See, e.g., State v. Couch, 288 Wis.2d 659, 659 (Wis.Ct.App. 2005) (holding that ceramic objects were "solid waste” and the littering statute was not unconstitutionally vague); State v. Cox, 1993 WL 65457 at *1 (Ohio. Ct.App.1993) (holding that the definition of litter as "garbage, trash, waste, or rubbish ...” was not unreasonably vague); Sliney v. State, 260 Ga. 167, 391 S.E.2d 114, 115 (1990) (holding that the terms "waste,” "litter,” and "garbage” in a statute forbidding the removal of refuse from a refuse container were not unconstitutionally vague); State v. Clayton, 492 So.2d 665, 666-67 (Ala.Crim.App.1986) (holding that a statute using the term "solid waste” was not vague, ambiguous, or unenforceable); State v. Hood, 24 Wash.App. 155, 600 P.2d 636, 639 (1979) (holding that a statute that prohibited people from “dispos[ing] of litter” was not unconstitutionally vague).